CANBY, Circuit Judge:
Defendants-Appellants Larry and Joe Sayetsitty were convicted in separate jury trials of second-degree murder in violation of 18 U.S.C. §§ 1153 (Major Crimes Act), 1111 (murder), and 2 (aiding and abetting). Larry Sayetsitty appeals both his conviction and his sentence; finding no error in either, we affirm. Joe Sayetsitty appeals only his conviction; we reverse because we conclude that the district court erred in failing to instruct on voluntary intoxication as a defense to the crime of aiding and abetting second-degree murder.[1]
I.
BACKGROUND
Larry and Joe Sayetsitty are brothers and members of the Navajo Nation. They spent the night of June 24, 1996, drinking and socializing in various locations. At approximately 4 a.m. on June 25, they drove in Larry’s truck to a party at Diversion Dam, a site within the Navajo Indian reservation near Kayenta, Arizona. While at Diversion Dam, Larry became involved in an argument with the decedent, Jerry Lee Stanley. Joe joined the argument, and a brief fight ensued before it was broken up by others.
Stanley then left Diversion Dam. Larry and Joe followed in Larry’s truck. While following Stanley, Larry told Joe that he was in a land dispute with the Stanleys and that he and Stanley had fought three times before.
*-176 At approximately 5:20 a.m., Stanley stopped at the residence of a friend, Kent Parrish, who lived on the reservation. Larry pulled up behind Stanley’s truck and told Joe, “the guy parked in front of us, when he comes by here, throw him down.” As instructed, Joe grabbed Stanley by the shoulders as he came by and threw him to the ground. Both Larry and Joe then kicked Stanley. One witness saw Joe kick Stanley in the head, and another saw Larry kick him in the head eight to ten times, with the motion and strength one might use in kicking a football field goal. Finally, Stanley’s friend came outside and broke up the encounter. Joe and Larry then left the Parrish residence in Larry’s truck and drove to Larry’s residence. Stanley’s friend drove Stanley to the hospital, where he was pronounced dead. He was later determined to have died of head injuries.
When Larry and Joe reached Larry’s residence, the two separated. Larry stayed home and went immediately to sleep; he was later awakened and arrested by tribal police officers. Joe, however, left Larry’s home in his own truck. As Joe approached the highway he saw a police ear approaching and turned back toward Larry’s house. The police officer called for assistance but did not follow Joe at that time. Joe’s truck became stuck in a wash, and he fled the truck. When a Navajo police officer discovered him shortly thereafter, he was passed out underneath a tree. According to the officer, Joe smelled of alcohol and appeared intoxicated. The officer arrested Joe for public intoxication and took him to the tribal detention center to sober up, the normal Navajo police procedure for dealing with intoxicated individuals. Several hours later, after being read his Miranda, rights, Joe confessed to F.B.I. special agents concerning his role in the assault on Stanley.
Larry and Joe were indicted for the premeditated murder of Jerry Lee Stanley. The district court granted their motion to sever. Joe was tried first; the jury convicted him of second-degree murder, and he was sentenced to 145 months in prison followed by 48 months of supervised release. Larry was then tried and also convicted of second-degree murder; he was sentenced to 225 months in prison followed by 48 months of supervised release. Both defendants appealed.
II.
LARRY SAYETSITTY’S APPEAL
Larry raises three issues on appeal, one relating to his conviction and two to his sentence. Larry argues that the district court erred in: (1) denying his motion for new trial on the ground of prosecutorial misconduct; (2) increasing his base offense level by two levels for obstruction of justice; and (3) denying him a three-level reduction in his base offense level for acceptance of responsibility.
A. Prosecutorial Misconduct.
Larry asserts that the prosecution engaged in four kinds of misconduct necessitating a new trial: (1) it used inflammatory language throughout the trial; (2) it improperly elicited evidence that Joe was also charged with Stanley’s murder; (3) it improperly suggested to the jury that Larry was signalling Joe during Joe’s testimony; and (4) it made improper arguments during closing argument. We review for abuse of discretion the district court’s denial of Larry’s motion for new trial based on allegations of prosecutorial misconduct. United States v. Meling, 47 F.3d 1546, 1556 (9th Cir.), cert. denied, — U.S. —, 116 S.Ct. 130, 133 L.Ed.2d 79 (1995). We conclude that the district court did not abuse its discretion.
1. Inflammatory language.
Larry first contends that the prosecution attempted to inflame the passion and prejudice of the jury by using “abrasive characterizations” and improper “descriptive words” during trial. He complains of the prosecution’s references to the “attack,” “assault,” “killing,” “brutal kicking,” and “animal-like attack.” He also complains of the prosecution’s comment that Stanley “died in his friend’s arms,” its question to a witness asking whether Larry’s kicks were like “a person kicking a ball,” and its comment that “a drunk man has just as much right to live *-175 and get up in the morning with a hangover as a sober man deserves to live through the night.”
We agree with the district court that nearly all of these characterizations were consistent with the evidence presented at trial. The argumentative characterizations were made during argument; the prosecution is allowed to argue reasonable inferences based on the evidence. United States v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991). In addition, Larry did not object "at trial to many of the references that he now challenges. To the extent that any of these comments went beyond the evidence, they did not, when “considered in the context of the entire trial, ... a£fect[ ] the jury’s ability to judge the evidence fairly.” United States v. McKoy, 771 F.2d 1207, 1212 (9th Cir.1985).
2. Joe’s criminal charges.
Larry also contends that the prosecution violated one of the district court’s pretrial orders by improperly eliciting testimony that his brother Joe had been charged with murdering Stanley. That allegation, however, misconstrues the district court’s order, which only instructed the prosecution to avoid testimony indicating either that Joe had previously been tried for Stanley’s murder or that Joe was testifying at Larry’s trial under a grant of use immunity. The prosecution did not elicit such testimony at trial.
3. Larry’s signalling of Joe.
Larry next contends that the prosecution improperly suggested to the jury that Larry was signalling Joe during Joe’s testimony. Twice during that testimony, the prosecution attempted to ask Joe whether he was looking at Larry for answers to its questions. The first time, the court sustained the defense’s objection. The second time, the court ruled the question permissible and denied the defense’s motion for a mistrial. The district court later found, after hearing, that signalling had occurred. We agree with the district court that, under these circumstances, the question was not improper.
4.Improper arguments.
Finally, Larry contends that the prosecution made a variety of improper statements during its final argument. In particular, Larry challenges the prosecution’s statements that: (1) Alphie Johnson’s testimony corroborated Stanley’s identity; (2) Larry kicked Stanley at Diversion Dam; (3) Larry kicked Stanley at Kent Parrish’s house in the same way he had done at Diversion Dam; (4) Larry was motivated by a land dispute; (5) defense counsel was a “liar” with respect to his characterization of the police investigation of Larry as one of expedience and laziness; (6) defense counsel would require a two-year autopsy to be convinced that Stanley’s death was the result of repeated kicks; (7) defense counsel’s characterization of the investigation, evidence, and testimony as a “web of injustice” was offensive; and (8) the character of defense counsel was comparable to the character of Larry.
We find no abuse of discretion in the denial of a. new trial for any of these alleged instances of misconduct. The first four challenged statements all fall within the “wide latitude” both prosecutors and defense attorneys are allowed in closing argument, see United States v. Vaccaro, 816 F.2d 443, 451 (9th Cir.), cert. denied, 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987), latitude that embraces reasonable inferences from the evidence presented at trial. Molina, 934 F.2d at 1445. The record does not indicate that the prosecution ever called defense counsel a “liar.” The prosecution did state, in rebuttal, that defense counsel’s characterization of the government’s investigation as a “web of deception” was untrue. That statement, however, was an “invited reply” to defense counsel’s closing argument. See United States v. Lopez-Alvarez, 970 F.2d 583, 598 (9th Cir.), cert. denied, 506 U.S. 989, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992). The same is true of the prosecution’s statement concerning defense counsel's desire for a two-year autopsy; defense counsel had argued that the autopsy conducted was too quick to be reliable. Criticism of defense theories and tactics is a proper subject of closing argument. See United States v. Kessi, 868 F.2d 1097, 1106 (9th Cir.1989). Finally, the record simply *-174 does not support the claim that the prosecution equated the character of defense counsel with the character of Larry.
We conclude, therefore, that the district court did not abuse its discretion in denying Larry’s motion for new trial. We proceed, then, to Larry’s challenges to his sentence.
B. Obstruction of Justice.
Larry argues that the district court erred in increasing his base offense level by two levels for obstruction of justice, because of Larry’s signalling Joe during Joe’s testimony. We find no error. The Guideline commentary specifies that one type of conduct meriting a two-level enhancement for obstruction of justice is “threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so.” U.S.S.G. § 3C1.1, comment, (n. 3(a)) (1994). At the hearing on Larry’s motion for a new trial, the district court found “by a preponderance of the evidence, based upon the testimony at the hearing [concerning whether Larry was attempting to signal Joe while Joe testified], that there was such an attempt.” We review for clear error the district court’s finding that signalling occurred. United States v. Morales, 977 F.2d 1330, 1330-31 (9th Cir.1992) (per curiam), cert. denied, 507 U.S. 966, 113 S.Ct. 1399, 122 L.Ed.2d 772 (1993).
The district court’s finding was not clearly erroneous. Two witnesses whom the district court found to be credible testified that Larry had signalled. Such signalling, we conclude, qualifies as an obstruction of justice. See id. (we review de novo what conduct constitutes an obstruction of justice). The prosecution was not required to prove that Larry actually obstructed justice; a showing of attempt is sufficient to warrant the two-level increase. United States v. Baker, 894 F.2d 1083, 1084 (9th Cir.1990). The two-level enhancement was justified.
C. Acceptance of Responsibility.
Finally, Larry argues that the district court erred in denying him a three-level reduction in his base offense level for acceptance of responsibility. The district court did not err. A defendant is entitled to a two-level reduction if he shows acceptance of responsibility by, inter alia, truthfully admitting the conduct that comprised the offense, surrendering to authorities promptly after committing the offense, or assisting the authorities in their investigation of his case. U.S.S.G. § 3El.l(a), (d), (e), comment, (n.l) (1994). He is entitled to an additional one-level reduction if, in addition to qualifying for the two-level reduction, he assisted in the investigation or prosecution of his case by “timely providing complete information to the government concerning his own involvement in the offense” or by timely advising of his intent to plead guilty. U.S.S.G. § 3El.l(b) (1994). The district court did not clearly err in finding that Larry had met none of the requirements. See United States v. Vance, 62 F.3d 1152, 1157 (9th Cir.1995) (indicating that a denial of reduction for acceptance of responsibility is reviewed for clear error).
Larry did nothing prior to trial to indicate acceptance of responsibility. He denied guilt and put the government to its proof. See U.S.S.G. § 3E1.1, Application Note 2 (1987). Even after his conviction, Larry did not take complete responsibility for his actions; he continued to maintain that he kicked the victim only once in the stomach, despite eyewitness testimony to the contrary. He also falsely stated in his letter to the district court that he did not know the person whom he was kicking. Lying about offense conduct weighs heavily against a finding of acceptance of responsibility. Vance, 62 F.3d at 1160. Finally, an enhancement for obstruction of justice is usually inconsistent with a finding of acceptance of responsibility. See U.S.S.G. § 3E1.1, comment. (n.4) (1994).
We conclude, therefore, that the district court did not err either with regard to Larry’s motion for new trial, or with regard to his sentence. We affirm Larry’s conviction and sentence.
III.
JOE SAYETSITTY’S APPEAL
Joe raises six issues on appeal, all of which concern his conviction.- Joe argues that: (1) *-173 the district court should have suppressed his confession on the ground that his arrest for public intoxication was pretextual; (2) the district court erred in admitting two out-of-court statements made by Larry; (3) the district court erred in refusing to instruct the jury that voluntary intoxication can be a defense to second-degree murder; (4) the district court erred in refusing to instruct the jury that voluntary intoxication can be a defense to aiding and abetting second-degree murder; (5) the district court should have granted his Rule 29 motion, at least in part, because there was insufficient evidence to support the finding that Joe rather than Larry caused Stanley’s death; and (6) the district court erroneously shifted the burden of proof from the government to him when it misread the jury instruction on voluntary intoxication.
We conclude that contention numbered (4) has merit; voluntary intoxication can be a defense to aiding and abetting second-degree murder. Because we conclude that the district court erred in not so instructing, we reverse Joe’s conviction and remand for retrial. That disposition makes it unnecessary to address most of Joe’s other arguments, but we do treat those issues that are likely to recur upon retrial. See United States v. Rodriguez, 45 F.3d 302, 306-07 (9th Cir.1995) (reaching evidentiary issues even though errors in jury instructions required reversal).
A. Voluntary Intoxication Instruction.
The district court instructed the jury that it could convict Joe of second-degree murder if it found either that he killed Stanley with malice aforethought or that he aided and abetted Larry in doing so. The district court then instructed the jury, correctly enough, that for Joe to be guilty of aiding and abetting, he must have acted “with the knowledge and intention of helping Larry Sayetsitty commit First Degree Murder, or, alternatively, Second Degree Murder, or alternatively, Involuntary Manslaughter.” The district court followed that instruction, however, with the following instruction concerning voluntary intoxication:
You may consider evidence of intoxication in deciding whether the government has proved beyond a reasonable doubt that the defendant acted with the intent to commit First Degree Murder, but not as to Second Degree Murder or Involuntary Manslaughter.
Joe’s counsel had requested generally a voluntary intoxication instruction, but the district court determined that it should not be given for second degree murder because second degree murder was not a specific intent crime. See United States v. Lopez, 575 F.2d 681, 684 (9th Cir.1978). The district court accordingly gave the instruction quoted above, and Joe’s counsel entered no objection to the instruction as given.
Joe now argues that the district court’s instruction was defective because, although second degree murder is not a specific intent crime, aiding and abetting requires a specific intent, which could be negated by voluntary intoxication. The parties dispute whether a “plain error” standard of review applies; we conclude that it does. Joe failed to object to the instruction as given. See Fed.R.Crim.P. 30. Joe’s request for a voluntary intoxication instruction did nothing to alert the district court to the aiding and abetting issue, as Joe now presents it on appeal. See United States v. Williams, 990 F.2d 507, 511 (9th Cir.) (“Offering an alternative instruction alone is not enough; the district court must be fully aware of the objecting party’s position.”), cert. denied, 510 U.S. 926, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993). We therefore review for plain error.
Our plain error review is governed by United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), in which the Supreme Court defined the conditions under which we may correct plain error under Fed.R.Crim.P. 52(b). First, there must be an actual error, not merely a waiver of rights. Id. at 732-34, 113 S.Ct. at 1777. Second, the error must be plain — that is, the error must be “clear” or “obvious.” Id. Third, the error must have affected “substantial rights,” which typically means that the error must have been prejudicial. Id. at 734-36, 113 S.Ct. at 1778. Even if an error satisfies these three conditions, we retain discretion and should employ it to correct plain error only in cases in which “ ‘a miscar *-172 riage of justice would otherwise result.’” Id. at 736, 113 S.Ct. at 1779 (quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)).
We conclude that the district court’s failure to instruct on voluntary intoxication as a defense to aiding and abetting second degree murder meets all three of Olano’s conditions, and that a failure to remedy the plain error would result in a miscarriage of justice. First and second, the failure to instruct was error and, under the law of this circuit, the' error was plain. “[I]n a prosecution for a specific intent crime, intoxication (although voluntary) that precludes formation of the requisite intent may be established as a defense.” United States v. Echeverry, 759 F.2d 1451, 1454 (9th Cir.1985). There is no doubt that Joe laid the evidentiary groundwork for a defense of voluntary intoxication; the circumstances of his arrest alone make that clear. Indeed, the district court instructed on voluntary intoxication as a defense to first-degree murder. The district court negated the intoxication defense to second-degree murder because second-degree murder is not a specific intent crime. See Lopez, 575 F.2d at 684. That ruling was correct insofar as Joe was charged as a principal, but Joe was also charged and tried on the theory that he aided and abetted Larry in committing second-degree murder. Our circuit law is clear that aiding and abetting contains an additional element of specific intent, beyond the mental state required by the principal crime.[2]
The elements necessary to convict an individual under an aiding and abetting theory are (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense.
United States v. Gaskins, 849 F.2d 454, 459 (9th Cir.1988) (emphasis added). In Gas-kins, we held that the trial court committed reversible error by instructing on aiding and abetting after having said it would not do so, thus depriving the defendant of the opportunity to argue against the additional elements interjected by the aiding and abetting theory. See also United States v. Dinkane, 17 F.3d 1192, 1195 (9th Cir.1994) (holding that instruction on aiding and abetting armed bank robbery must include elements of knowledge that principal was armed and intent to aid in armed robbery); United States v. Andrews, 75 F.3d 552, 555 (9th Cir.) (indicating that conviction for aiding and abetting murder and attempted voluntary manslaughter requires specific intent to facilitate principal’s commission of those crimes, in addition to intent required by crimes themselves), cert. denied, — U.S. —, 116 S.Ct. 1890, 135 L.Ed.2d 183 (1996).
Our aiding and abetting eases are paralleled by our cases dealing with attempts. In United States v. Sneezer, 900 F.2d 177, 179 (9th Cir.1990), we held that, even though sexual abuse is a general-intent crime, the crime of attempted sexual abuse includes an element of specific intent to accomplish the completed crime. Accordingly, the defendant was entitled to an instruction on involuntary intoxication. Id. at 180. See also United States v. Darby, 857 F.2d 623, 626 (9th Cir.1988) (indicating that although bank robbery is a general-intent crime, conviction for attempted bank robbery requires proof of specific intent). Attempts, like aiding and abetting, involve a degree of uncertainty regarding the defendant’s purpose to commit the underlying crime-an uncertainty that is not present in the case of a principal who actually commits the crime. Because of that uncertainty, it is reasonable to require proof of a specific intent that would not be required of one who completed the crime. See Sneezer, 900 F.2d at 180.
Because Gaskins and Dinkane had clearly established, before the district court instructed Joe’s jury, that aiding and abetting includ *-171 ed an element of specific intent, and because those cases were further supported by the attempt cases, Sneezer and Darby, the district court’s error was clear or obvious. See United States v. Turman, 104 F.3d 1191 (9th Cir.1997) (holding that, to constitute plain error, error must be clear at time district court ruled).
The third Olano requirement is also met; the error affected Joe’s substantial rights. To convict Joe on an aiding and abetting theory, the government had the burden of proving beyond a reasonable doubt that Joe had the capacity to form the necessary specific intent. Echeverry, 759 F.2d at 1454. The failure of the district court to instruct on voluntary intoxication means that the jury could have convicted Joe for aiding and abetting second degree murder even though it believed that he was too intoxicated to form a specific intent. See United States v. Paul, 37 F.3d 496, 500 (9th Cir.1994) (fact that jury could have convicted without finding necessary intent makes error prejudicial under plain error standard).
The likelihood is very high that the jury convicted Joe as an aider and abettor rather than as a principal.[3] The government’s brief makes clear that aiding and abetting was its primary theory of guilt:
The prosecutor made a single reference in closing that the evidence ‘could go either wayh Joe Sayetsitty could be held responsible as a principal for his kick to the head, or he could be found guilty as an aider and abettor in Stanley’s death. Other than this isolated reference, the government argued only an aiding and abetting theory.
(Emphasis added). The evidence that Larry delivered the fatal kicks was much stronger than the evidence that Joe did. We conclude, therefore, that Joe has carried his burden of showing substantial prejudice. See Olano, 507 U.S. at 734-36, 113 S.Ct. at 1778 (indicating that defendant has burden of showing prejudice under plain error standard).
Many of these same facts lead us to con-elude, in exercising our discretion to rectify the plain error, that “a miscarriage of justice would otherwise result.” Id. at 736, 113 S.Ct. at 1778-79. The government did not dispute at trial, and does not dispute on appeal, that Joe was voluntarily intoxicated during the assault that caused Stanley’s death. The district court’s instruction prevented the jury from considering the evidence of Joe’s intoxication when it determined whether Joe was guilty as an aider and abettor of Larry in committing second-degree murder. Had it considered that evidence under an instruction that voluntary intoxication may negate the required specific intent to aid and abet, it is very possible, even likely, that it would have acquitted Joe of second-degree murder. By the government’s own admission, with one exception, “the government argued only an aiding and abetting theory.” To permit Joe to be convicted, very probably, of aiding and abetting without a finding of the necessary element of specific intent would be a significant miscarriage of justice.
We recognize that Joe has no Due Process right to a defense of voluntary intoxication if the legislature chooses to exclude it. See Montana v. Egelhoff, — U.S. —, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996). When the defense is permitted by law, however, the defendant is entitled to have the jury consider it in order to determine whether the government has proved all elements of the offense. In Martinez v. Borg, 937 F.2d 422, 423-25 (9th Cir.1991), we held that it was constitutional error for a state court to fail to instruct a jury that it must find a specific intent to convict for aiding and abetting second degree murder and attempted murder. We granted habeas corpus relief because of that error, and because the record did not establish that the jury necessarily found the requisite specific intent. Id. at 424-25 (citing Carella v. California, 491 U.S. 263, 267-68, *-170 109 S.Ct. 2419, 2421-22, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring)). Thus a defendant has a constitutional right to have the jury consider defenses permitted under applicable law to negate an element of the offense. Although Borg arose in a different context, it lends support to our conclusion that the plain error in this case “seriously affect[ed] the fairness” of Joe’s trial. See Olano, 507 U.S. at 736-37, 113 S.Ct. at 1779.
The failure to instruct on voluntary intoxication as a defense to aiding and abetting second degree murder thus meets all three conditions for plain error under Olano, and also would lead to a miscarriage of justice if not rectified. We exercise our discretion to reverse Joe’s conviction of second-degree murder and remand for a new trial. See id.
B. Issues Likely to Appear again at Retrial.
Because the same issues are likely to arise at Joe’s retrial, we will address Joe’s arguments that the district court should have suppressed his confession on the ground that his arrest for public intoxication was pretex-tual, and that the district court erred in admitting two out-of-court statements made by Larry.
1. Pretextual arrest.
The district court did not err in denying Joe’s motion to suppress his confession on the ground that his arrest for public intoxication was pretextual. Joe may be correct in insisting that the tribal officer who discovered him passed out beneath a tree intended to arrest him for murder prior to discovering that he was publicly intoxicated. But “[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.” Whren v. United States, — U.S. —, —, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). The validity of an arrest depends upon the objective facts and circumstances of the arrest, not upon the arresting officer’s subjective intent. United States v. Cannon, 29 F.3d 472, 476 (9th Cir.1994). Here, the objective facts and circumstances surrounding Joe’s arrest clearly establish probable cause to believe that Joe was guilty of public intoxication: he was passed out under a tree, having left his truck moments earlier; his truck was seen driving recklessly; when revived, he had a strong smell of alcohol on his breath; his eyes were bloodshot; his speech was slurred; and he staggered when he walked.
Because the tribal officer had probable cause to arrest Joe for public intoxication, the officer’s arrest was not invalid as pretex-tual. See Whren, — U.S. at —, 116 S.Ct. at 1777. As a result, the district court’s admission of his confession to the F.B.I. was not error.
2. Co-conspirator hearsay.
Joe also argues that the district court erred in admitting the following out-of-court statements made by Larry:
Q. Mr. Sayetsitty, ... what did your brother Larry say in the truck ride from Diversion Dam to the Parrish house?
A. (Defendant) ... he started talking ... he said, these — those that are named Stanley, they keep fighting me over land. This has happened three times. And he was very mad.
* * * *
Q. ... did Larry say anything to you before getting out of the truck?
A. He said the guy that parked in front of us, when he comes by here, throw him down.
The district court admitted the two statements pursuant to the co-conspirator hearsay exception, Fed.R.Evid. 801(d)(2)(E). Joe disagrees with the district court’s interpretation of Fed.R.Evid. 801(d)(2)(E). In his view, the district court should not have invoked the exception, because there was no independent evidence — evidence other than Larry’s statements — indicating that he and Larry conspired to kill Stanley, and because Larry’s statements were not made during and in furtherance of the conspiracy.
We do not have to reach Joe’s argument concerning Fed.R.Evid. 801(d)(2)(E), however, because Larry’s statements were not hearsay. “‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evi *-169 dence to prove the truth of the matter asserted.” Fed.R.Evid. 801(c). Larry’s statements were not introduced to prove the truth of the matters they asserted. The first statement — “those that are named Stanley, they keep fighting me over land” — was not introduced at Joe’s trial, to prove that, in fact, Larry was in a land dispute with the Stanleys. The statement was introduced to establish intent on the part of Larry and Joe, and would be admissible for that purpose even if it were hearsay. See Fed.R.Evid. 803(3); United States v. Pheaster, 544 F.2d 353, 376 (9th Cir.1976) (stating that “hearsay evidence is admissible if it bears on the state of mind of the declarant and if that state of mind is an issue in the case”), cert. denied, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). Similarly, the second statement— “the guy that parked in front of us, when he comes by here, throw him down” — was, by Joe’s own admission, offered to show that it induced in Joe the malice aforethought necessary to establish that element of second-degree murder. It was not introduced to prove the truth of any proposition stated. The statements were therefore not hearsay. Id.
IV.
CONCLUSION
We AFFIRM Larry Sayetsitty’s second-degree murder conviction and sentence. We REVERSE Joe’s second-degree murder conviction because the district court plainly erred in refusing to instruct the jury at Joe’s trial that voluntary intoxication can be a defense to aiding and abetting seeond-degree murder. We REMAND Joe’s ease for retrial.
No. 95-10483 AFFIRMED.
No. 95-10484 REVERSED AND REMANDED.

. We have jurisdiction pursuant to 28 U.S.C. § 1291.

. Not every circuit agrees. See United States v. Roan Eagle, 867 F.2d 436, 445 (8th Cir.) (indicating that aiding and abetting is not a specific intent crime; despite contradictory language in prior circuit opinions, conviction requires only sharing the requisite intent of the underlying offense), cert. denied, 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989).

. The fact that the jury could have convicted Joe of second-degree murder as a principal instead of as an aider and abettor does not affect our analysis. "CTlhe proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.” Yates v. United States, 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957); but see Griffin v. United States, 502 U.S. 46, 51-56, 112 S.Ct. 466, 470-73, 116 L.Ed.2d 371 (1991).