IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,505

STATE OF KANSAS,
*Appellee*,

v.

JARON CHANCE PALMER,
*Appellant.*

SYLLABUS BY THE COURT

1.

Appellate courts review sufficiency challenges by viewing all the evidence in the light most favorable to the State to determine whether a rational juror could have found the defendant guilty beyond a reasonable doubt.

2.

It is reasonably foreseeable that an armed intrusion into an occupied residence could provoke resistance and result in death.

3.

In prosecutions for an attempted crime—when the statute defining the crime does not include an attempt as a means of violating that statute—the default rule in K.S.A. 21-5301(a) obligates the State to prove a defendant had the specific intent to commit the intended crime, even if that crime as a completed crime does not require the specific intent.

4.

A defendant prosecuted under an aiding and abetting theory for a specific intent crime—including the crime of attempt under K.S.A. 21-5301(a)—must have the same specific intent to commit the crime as the principal.

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Oral argument held May 13, 2025. Opinion filed October 24, 2025. Affirmed.

*Sean P. Randall*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  A jury convicted Jaron Chance Palmer of multiple offenses, including felony murder committed while attempting aggravated robbery. In this direct appeal, he argues the evidence was insufficient to support his felony-murder conviction and that the jury instruction on responsibility for crimes of another was legally inappropriate under *State v. Mora*, 315 Kan. 537, Syl. ¶¶ 1-2, 544, 509 P.3d 1201 (2022) (holding a defendant and principal must share the same specific intent for the defendant to be guilty of attempting or aiding and abetting specific intent crimes). We hold the evidence was sufficient and that the challenged instruction, while legally inappropriate, did not amount to clear error, so we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Five individuals shared an apartment in Wichita from which THC products and marijuana were often sold. Around 6:30 p.m. on April 25, 2021, someone knocked on the

2

front door. Dax Dendurent, who had been playing video games with Eric Stokes, opened the door slightly and saw three masked individuals—one tall, one broad, and one shorter and thinner. They forced the door open, knocking Dendurent to the ground. They yelled out for money, drugs, and guns. Dendurent saw the tall one was armed. The intruders split up, with one going to the bedrooms and the others remaining in the hallway between the living room and the bedrooms.

Three other occupants were inside one of the two bedrooms, when one noticed the video game sounds from the living room had stopped. Alexis Leonard looked out and saw two masked men demanding guns and money. She heard a third voice but saw no one else. She quickly locked the bedroom door and told the others what she had seen. She handed a shotgun to Christopher Oliver-Welch, while Braydon Aggson armed himself with a handgun. An intruder punched at their door, trying to get in. Aggson warned the person outside three times to stop, or he would shoot. When the punching continued, Aggson fired a shot that passed through the bedroom door into the bathroom across the hall. The intruders retreated from the hallway.

As they did, gunfire erupted. Dendurent saw the tall man fire his weapon several times. Leonard called 911 once the shooting stopped. Police officers quickly responded, finding Aggson injured and Stokes dead from a gunshot wound.

Investigators retrieved surveillance camera footage from neighboring buildings. It showed two individuals—later identified as Palmer and his brother Easton Shaner-Palmer—near a dumpster, running toward a black car, and briefly hiding from a passing police car. One approached a trash can where a firearm was later found. A forensic scientist linked that gun to eight cartridge cases and multiple fired bullets, including the one killing Stokes, from the apartment.

Police identified Easton from the video and contacted him. He admitted it was him and Palmer in the video. Easton told the police that he, Palmer, and their friend Breckyn Elliot had planned to rob the apartment because marijuana was sold there, although no one took anything from the apartment that evening. Easton ran out when he heard a gunshot, passing Palmer, who was "kind of ducked around the corner of the [front] door." Easton saw Palmer, the only one who had brought a gun, raise "something" and then heard gunshots. Easton did not look back. Outside, Easton saw Palmer throw "something" into a trash can.

The State charged Palmer with felony murder under K.S.A. 21-5402(a)(2), attempted aggravated robbery under K.S.A. 21-5420(b)(1) and K.S.A. 21-5301(a), aggravated burglary under K.S.A. 2020 Supp. 21-5807(b)(1), "knowing" aggravated battery under K.S.A. 21-5413(b)(1)(B), and misdemeanor battery under K.S.A. 21-5413(a)(2). A jury convicted him as charged, except for a lesser included offense of "reckless" aggravated battery under K.S.A. 21-5413(b)(2) for shooting Aggson's leg. The district court denied his posttrial motions and sentenced him to a hard 25 plus 86 months in prison, plus 6 months in jail with all counts running consecutive.

Jurisdiction is proper. See K.S.A. 22-3601(b)(3) (life imprisonment), (b)(4) (off-grid crime); K.S.A. 21-5402(b) (felony murder is an off-grid person felony).

SUFFICIENCY OF THE EVIDENCE

Palmer argues the State presented "no evidence" to prove the killing occurred during an attempted commission of an aggravated robbery, which is a required element. He asserts: (1) the attempted crime ended when Aggson fired a warning shot, so the killing occurred after, not during, the attempted crime; and (2) Aggson's shot was an

4

extraordinary intervening event that legally caused the death because Palmer merely returned fire in self-defense. We reject both contentions.

*Standard of review*

Appellate courts review sufficiency challenges by viewing all the evidence in the light most favorable to the State to determine whether a rational juror could have found the defendant guilty beyond a reasonable doubt. *State v. Barnes*, 320 Kan. 147, 178, 563 P.3d 1255 (2025).

*Discussion*

To secure Palmer's felony-murder conviction, the State had to establish Palmer, or another for whose conduct he was criminally responsible, killed Stokes while attempting to commit aggravated robbery. See K.S.A. 21-5402(a)(2) ("Murder in the first degree is the killing of a human being committed . . . in the . . . attempt to commit . . . any inherently dangerous felony."), (c)(1)(D) ("As used in this section, an 'inherently dangerous felony' means . . . aggravated robbery as defined in K.S.A. 21-5420[b][1]."). "An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 21-5301(a). In *State v. Carter*, 316 Kan. 427, 433, 516 P.3d 608 (2022), the court explained the statutory framework for establishing felony murder:

> "'[T]o establish felony murder, the State must prove two causation elements. First, the death must lie within the res gestae of the underlying crime, which is defined in this context as acts committed before, during, or after the happening of the principal occurrence, when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence. Second, the felony and the homicide must have

a direct causal connection, which exists unless an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death.'"

The district court instructed the jury accordingly. Instruction No. 10 provided, in part, "To establish [the murder] charge, each of the following claims must be proved . . . . The killing was done while defendant, or another for whose conduct he is criminally responsible, was attempting to commit an aggravated robbery." And Instruction No. 15 provided the elements of attempted aggravated robbery.

Palmer's brief first argues "the attempted aggravated robbery was complete once Mr. Palmer and his associates stopped trying to take the residents' property by force," relying on the court's note in *State v. Phillips*, 295 Kan. 929, 944, 287 P.3d 245 (2012), that "'commission of robbery is complete when the robber takes possession of [the] property.'" His brief contends everything occurring after that point falls outside the res gestae of the underlying inherently dangerous felony.

But the precise moment when a robber decides to stop pursuing their initial robbery plan does not, as a matter of law, break the continuity between the attempted robbery and a killing. Cf. *State v. Brown*, 300 Kan. 542, 331 P.3d 781 (2014) (rejecting a bright-line rule that any particular fact automatically converts an attempted aggravated robbery into a completed one). Here, the jury found Palmer guilty on the felony-murder charge, necessarily determining the killing occurred during the attempt to commit the underlying felony. Our role is not to decide when the attempt ceased, but rather to assess whether the killing occurred during the attempt, by viewing the trial evidence in the light most favorable to the prosecution.

As the State correctly observes, sufficient evidence supports the jury's finding Palmer remained "still in the midst" of the attempted aggravated robbery when he killed

6

Stokes. The intruders demanded property, and Aggson discharged a warning shot through a bedroom door. As Easton stepped out the apartment door, Palmer stayed there, fired several rounds, ultimately killing Stokes before leaving himself. This sequence supports the jury's finding that the killing occurred while attempting aggravated robbery. See *State v. Pearce*, 314 Kan. 475, 480, 500 P.3d 528 (2021) (appellate courts review evidence in the light most favorable to the State and do not reweigh evidence).

Next, Palmer claims Aggson's gunfire constituted an extraordinary intervening event that severed the causal connection between his attempted crime and Stokes' death. This assertion lacks merit.

Palmer's argument pertains to the second "direct causation" element, but it is worth mentioning he misreads the first "res gestae" element while explaining his contention about the second one. In his brief, he repeatedly asserts the homicide fell outside "the *res gestae* of attempted [aggravated] robbery." But K.S.A. 21-5402(a)(2) describes felony murder as a killing committed "in the commission of, attempt to commit, or flight from any inherently dangerous felony," and our caselaw effectively restates that language. See *Carter*, 316 Kan. at 433. Res gestae encompasses "acts committed before, during, or after" the principal occurrence, so in this context, the principal occurrence refers to the intended crime (aggravated robbery) itself, not merely an attempted crime because actions performed before any overt act would not establish criminal liability. See K.S.A. 21-5301(a); *State v. Zimmerman*, 251 Kan. 54, Syl. ¶ 6, 833 P.2d 925 (1992) (an overt act requires "'the defendant took a step beyond mere preparation so that some appreciable fragment of the crime was committed'").

Returning to the "direct causation" issue, Palmer quotes the holding in *State v. Wilson*, 308 Kan. 516, 523, 421 P.3d 742 (2018) ("By extraordinary, we simply mean unforeseeable."), to contend Aggson's act of firing a gun was an extraordinary and

unforeseeable intervening event severing the causal chain between Palmer's attempted aggravated robbery and the resulting death. According to Palmer, the residents' involvement in illegal transactions rendered them foreseeable targets of violent crimes; thus, they were the direct cause of their roommate's death. "[B]ut for the presence of [cash and] illegal drugs," he claims, the residents would not have been targeted at all. He also argues he acted in self-defense to prevent his brother or him from being shot. This, however, is not how courts analyze the direct causation element.

> "'A felon's attempt to commit a robbery sets in motion a chain of events which should cause him to contemplate that a death might occur. This is particularly true of a robber who carries a deadly weapon . . . and forces his way into an occupied dwelling. The impulse for an individual to resist the sudden show of force, to defend himself or to come to the aid of a family member or loved one, is a basic human instinct. Under such circumstances every robber who expects human opposition to his quest to steal, as he must when he commits a statutory robbery, is a potential assassin because he knows he may be forced to use his weapon either to carry out his criminal act or to escape without being pursued and captured by his victim.' [Citations omitted.]" *Wilson*, 308 Kan. at 526.

As *Wilson* observes, the relevant inquiry is not whether the residents could have foreseen the robbery, but whether it was reasonably foreseeable to Palmer that his armed intrusion into the occupied apartment could provoke resistance and ultimately result in a death. Under existing precedent, it clearly was. See, e.g., *Pearce*, 314 Kan. at 482 ("[I]t is foreseeable that the use or threatened use of a gun would also increase the potential for violence that already exists at a drug sale."); *Wilson*, 308 Kan. at 526-27 (holding a violent crime like robbery often provokes resistance, and such defensive responses, e.g., returning gunfire, are foreseeable, not extraordinary; stating "it is foreseeable that violence begets violence"); *Phillips*, 295 Kan. at 942 ("[T]he causal relation is also satisfied because it is foreseeable that violence will erupt during an aggravated robbery in which the robber carries a gun.").

8

Our analysis likewise is not impacted by Palmer's claim that he acted in self-defense because that claim is not adequately briefed, so it is deemed abandoned. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("A point raised incidentally in a brief but not argued is also deemed abandoned."); *State v. Holley*, 315 Kan. 512, Syl. ¶ 1, 509 P.3d 542 (2022) ("[S]elf-defense is never a defense to felony-murder. A self-defense instruction may only be given in felony murder cases to the extent it may negate an element of the underlying inherently dangerous felony.").

We hold sufficient evidence supports Palmer's felony-murder conviction.

THE INSTRUCTIONAL ERROR CLAIM

Palmer's felony-murder conviction was predicated on a killing committed during the attempt to perpetrate aggravated robbery—both as a principal and, in the alternative, as an aider and abettor of the intended crime. He contends the instruction on responsibility for crimes of another was legally inappropriate based on *Mora*, 315 Kan. 537, and warrants the conviction's reversal. The challenged instruction stated:

"Instruction No. 18

"A person is criminally responsible for a crime if the person, either before or during its commission, and with the mental culpability required to commit the crime, intentionally aids another to commit the crime.

"*The person is also responsible for any other crime committed in carrying out or attempting to carry out the intended crime, if the person could reasonably foresee the other crime as a probable consequence of committing or attempting to commit the intended crime.* However, for the purposes of [the felony-murder charge], a victim's death does not have to be a reasonably foreseeable result of the attempted aggravated robbery.

9

"All participants in a crime are equally responsible without regard to the extent of their participation. However, mere association with another person who actually commits the crime or mere presence in the vicinity of the crime is insufficient to make a person criminally responsible for the crime." (Emphasis added.)

We recognize this instruction did not conform to *Mora*, but we hold Palmer still fails to meet his burden to demonstrate clear error, which is the standard governing an unpreserved instructional error claim. See K.S.A. 22-3414(3); *Mora*, 315 Kan. at 544 (when unpreserved instructional error is identified, the party claiming error bears the burden of "firmly convinc[ing]" a reviewing court that the jury would have reached a different verdict in the absence of the error). We explain below.

*Preservation*

The parties dispute whether Palmer properly preserved this instructional issue in the district court, which affects "the test and degree of certainty" required to determine whether reversal is appropriate. See *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). In his brief, Palmer cites discussions with the district court referring to Instruction No. 16, not No. 18. Even so, our review of the record shows Palmer did not object or otherwise comment on Instruction No. 18 during the jury instruction conference.

But even assuming Palmer's objection referred to Instruction No. 18, not No. 16, that objection stated solely factual grounds:  "The only objection I have, Your Honor, is that I don't think *the evidence* supports giving this instruction." (Emphasis added.) Palmer offered no reason why it was factually inappropriate and did not assert a legal basis for the objection.

10

We hold the stated issue on appeal, based on *Mora*, is raised for the first time. See K.S.A. 22-3414(3) (unpreserved instructional issue may be raised on appeal).

*Discussion*

The State acknowledges Instruction No. 18's second paragraph—imposing liability for crimes of another that were a reasonably foreseeable consequence of attempting to commit the intended crime—was legally flawed. In *Mora*—a felony-murder case involving a homicide that occurred during an attempt to commit aggravated robbery charged under an aiding and abetting theory—the court addressed a challenge to language sufficiently similar, if not identical, to that used in Palmer's case. The problematic text in both cases corresponds to the second or middle paragraph of PIK Crim. 4th 52.140. The *Mora* court held,

> "[I]n prosecutions for an attempted crime—when the statute defining the crime does not include an attempt as a means of violating that statute—the default rule in K.S.A. 2020 Supp. 21-5301(a) requires the State to prove the defendant had the specific intent to commit the intended crime, even if that crime would not require specific intent as a completed crime. As the Ninth Circuit has recognized, charging a defendant with an attempted crime 'involve[s] a degree of uncertainty regarding the defendant's purpose to commit the underlying crime—an uncertainty that is not present in the case of a principal who actually commits the crime.' *United States v. Sayetsitty*, 107 F.3d 1405, 1412 (9th Cir. 1997). Because of this uncertainty, 'it is reasonable to require proof of a specific intent that would not be required of one who completed the crime.' 107 F.3d at 1412.

> "Because K.S.A. 2020 Supp. 21-5420—the statute governing the crime of aggravated robbery—does not include any 'attempt' language, the Legislature intended the crime of attempted aggravated robbery to be controlled by the default rule in K.S.A. 2020 Supp. 21-5301(a). In other words, in a prosecution for attempted aggravated robbery the State must prove that the defendant had the specific intent to commit robbery. This remains true for a defendant prosecuted for this crime under an aiding and abetting

11

theory. [*State v.*] *Overstreet*, 288 Kan. [1,] 13, 200 P.3d 427 [2009] (defendant prosecuted under an aiding and abetting theory must have the same specific intent to commit the specific intent crime as the principal).

"This renders the middle paragraph in PIK Crim. 4th 52.140 legally inappropriate in Mora's case, because instructing the jury on foreseeability 'would impermissibly relieve the State of the burden to prove a specific intent.'" *Mora*, 315 Kan. at 543-44.

*Mora* controls, which renders Instruction No. 18's second paragraph legally erroneous. See *State v. Holder*, 314 Kan. 799, 806, 502 P.3d 1039 (2022) ("[O]ur law is clear that 'an instruction must always fairly and accurately state the applicable law, and an instruction that does not do so would be legally infirm.'").

Palmer, of course, asserts this error was not harmless under the statutory harmless error standard, but as mentioned, the proper standard is clear error review. Regardless, Palmer advances two reasons why this error warrants reversal: (1) the instruction confused the jury, as shown by its question during deliberations, which he contends was regarding Instruction No. 18; and (2) "scant evidence" shows Palmer intended to commit aggravated robbery.

First, he notes, during deliberations, the jury asked the district court:

"Could you clarify from page 12, *last sentence*. Mere association with another person who actually commits the crime or mere presence in the vicinity of the crime is insufficient to make a person criminally responsible for the crime. To assist us in determining counts 1 & 3 [felony murder & aggravated battery]." (Emphasis added.)

12

Despite Palmer's claim on appeal, this question is plainly unrelated to the instruction's second or middle paragraph, which *Mora* renders legally flawed. The jury's point for clarification did not concern the foreseeability language.

Second, Palmer claims the evidence was minimal, showing only that he remained in the hallway while Easton struck the bedroom door. His brief asserts the evidence was unclear as to whether "Palmer ever demanded any money or drugs during the robbery." But the witnesses testified all three intruders wore masks and that Palmer brandished a firearm. This testimony was corroborated by physical evidence, including ballistics and surveillance footage. Ample evidence supports the jury's finding that Palmer intended to commit aggravated robbery in light of the evidence presented.

More importantly, although the challenged language was legally flawed, it did not impermissibly relieve the State of its burden to prove Palmer specifically intended to commit attempted aggravated robbery. Instruction No. 18 did not supplant or undermine Instruction No. 15, which independently and clearly required the jury to find specific intent for the attempted aggravated robbery charge. Instruction No. 15 provided:

> "The defendant is charged in count four with attempt to commit aggravated robbery. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:
>
> 1. *The defendant committed an overt act* toward the commission of aggravated robbery.
>
> 2. The defendant *did so with the intent to commit aggravated robbery*.
>
> 3. The defendant failed to complete commission of aggravated robbery."
> (Emphases added.)

13

Returning to Instruction No. 18, the first paragraph told the jury a person is criminally responsible if the person "intentionally aids another" in committing a crime. And the second paragraph told the jury that this person is "also responsible for any other crime" committed in the course of attempting to carry out the intended crime, if the person could reasonably foresee the other crime as a probable consequence of their actions. This instruction addresses "responsib[ility] for a crime committed by another" as provided in K.S.A. 21-5210(a).

Additionally, under Instruction No. 15, for the attempted aggravated robbery charge, Palmer was convicted as a principal, not merely as someone who aided Easton or Elliot in committing the acts constituting the offense. Therefore, his claim that Instruction No. 18 unlawfully reduced the State's burden to prove a specific intent lacks merit.

Finally, Instruction No. 10 is worth discussing in relation to Instruction Nos. 15 and 18. Instruction No. 10 stated:

"The defendant is charged in count one with murder in the first degree. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

1. The defendant, *or another for whose conduct he is criminally responsible*, killed Eric Stokes.

2. The killing was done while defendant, *or another for whose conduct he is criminally responsible*, was attempting to commit an aggravated robbery." (Emphases added.)

14

Taken together, Instruction Nos. 10 (felony murder), 15 (attempted aggravated robbery), and 18 (liability for crimes of another) indicate the State charged Palmer with felony murder under two theories: as the principal in the killing and as someone criminally responsible for the killing committed by others during the attempted aggravated robbery. These instructions make his case meaningfully different from *Mora*, in which the court reversed the felony-murder conviction after determining the instruction was legally inappropriate.

In *Mora*, the defendant was charged with attempted aggravated robbery solely under an aiding and abetting theory, and the killing was committed by his accomplice. The *Mora* court held the erroneous "foreseeability" instruction directly affected the jury's assessment of the defendant's mental state and the extent of his responsibility for the principal's actions because the defendant's liability depended entirely on the conduct and intent of another. *Mora*, 315 Kan. at 543-44. In contrast, Palmer was charged as the principal in the attempted aggravated robbery, meaning the jury was required to find he personally attempted to commit the underlying felony.

As a result, the error in Instruction No. 18 does not carry the same legal consequence here as it did in *Mora*. Besides, the trial evidence establishes Palmer, not his accomplices, killed Stokes, thereby minimizing the relevance and potential impact of the second paragraph on the felony-murder conviction.

Judgment of the district court is affirmed.

WILSON, J., not participating.

15

* * *

WALL, J., concurring:  I agree with the majority's holding that Jaron Chance Palmer failed to show that the challenged instruction was clearly erroneous.

I concur only in the result reached by the majority on Palmer's sufficiency challenge to his felony-murder conviction.

STEGALL, J., joins the foregoing concurring opinion.

16