No. 102,282

STATE OF KANSAS, *Appellee*, v. MICHAEL E. PHILLIPS, *Appellant*.

(287 P.3d 245)

Opinion filed October 26, 2012.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Michael Phillips directly appeals his convictions for first-degree felony murder, two counts of attempted aggravated robbery, and criminal possession of a firearm. His convictions stem from the shooting death of Miguel Moya, who Phillips said rushed at him unarmed during a scuffle. Phillips shot Moya after robbing two people at gunpoint at the same house. Phillips challenges: (1) the district court's failure to instruct the jury on the lesser included offenses of second-degree murder and voluntary manslaughter and on self-defense; (2) the State's failure to establish Moya's murder was committed during the commission of the underlying felonies; (3) alleged misstatements about the law during the State's closing argument; (4) the admission of evidence showing Phillips fled from police officers at an unrelated traffic stop and his use of an alias; and (5) his sentence imposing lifetime postrelease supervision. We affirm Phillips' convictions, but we vacate the lifetime postrelease supervision part of his sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

Moya was shot and killed inside a Wichita home shortly before 7 a.m. on November, 19, 2007, after a late night out with friends. According to the doctor who performed Moya's autopsy, the shot that killed him traveled downward inside his body while he was in a "recumbent" position or otherwise bending over in some way.

Police were led to Phillips after learning he may have called the house numerous times before the shooting. An arrest warrant was issued, but Phillips was not found until about 8 months later during a routine traffic stop. Phillips fled from police at the scene and once apprehended falsely told officers his name was Eric Brown.

During his interview with an investigating detective, Phillips explained that on the evening of November 18 he had planned on robbing another house. He admitted that he was carrying a gun with a potato silencer at the end of it. When that plan fell through, Phillips said he dropped off Tiffany Berry at Aaron Hardgraves' house (where Moya was shot), left to get ready to leave town, and eventually returned to the house to retrieve money Hardgraves owed him.

Phillips said that when he arrived at the house, he head-butted Hardgraves, who answered the door, and retrieved his money. Phillips said he did not take money from anyone else, though this claim was contradicted by Jose Blanco, who testified at trial that Phillips put a gun to his head and grabbed $450 out of his pocket.

After getting the money from Hardgraves, Phillips said he heard gunshots from another part of the house. He believed Berry, the woman he dropped off at the house earlier, either fired the shots or was being shot at, so he went looking for her. Phillips said he saw Berry and Moya together. He and Moya began pushing and shoving each other before Moya grabbed and rushed at him. Phillips said he started shooting at Moya, and continued shooting as he backed up to leave the house. In response to questioning by police regarding why he fired the gun at Moya, Phillips said, "I don't know, the dude kind of grabbed me, I probably shot him like three times maybe." Phillips said he was not trying to kill Moya and did not know where he was aiming. Phillips also said, "It could have been me getting shot at." But Phillips admitted he did not see Moya with a weapon.

No gun was ever found on Moya or in the house. Phillips said he later sold the weapon he used after the shooting. Investigators collected from the house a piece of potato, as well as gun casings.

Another eyewitness, Juan Lopez, testified at trial that he saw Moya get into a physical altercation with Berry, who shot a gun

into a door Moya hid behind. As the two struggled, Lopez said Phillips appeared and then Lopez heard Berry say the "Mexicans [were] going to die." Lopez said Moya began angrily rushing at Phillips and Berry when the two both began shooting at him. Lopez said he did not see Moya with a weapon.

Hardgraves also testified at trial. He said someone called the house asking for Berry four or five times during the night before the shooting. The Caller ID displayed the caller as "Michael Brown." But Hardgraves testified that he believed Phillips was the caller because of what occurred later. Hardgraves testified that he did not overhear Berry's conversation or know the duration of those calls, but "Michael Brown" did not call again once Phillips arrived at the house.

Hardgraves also testified that he knew Phillips because he had installed a CD player in Phillips' car, which he recalled was a red Buick Century. During the investigation, officers learned that Phillips drove a red Buick and that he left it parked outside Hardgraves' house.

Hardgraves said when Phillips arrived, Phillips head-butted him and put a revolver with a potato on the end of it to his head. He said Phillips did not say anything but reached into Hardgraves' pants pocket and took $40 cash. The next thing Hardgraves recalled was hearing shots fired, seeing Berry with a gun, and Moya coming towards Phillips. Moya stopped within a foot of Phillips before being shot by him. Hardgraves said there was no delay between the time Moya was rushing Phillips and the shots being fired. Hardgraves said Moya never made physical contact with Phillips and that Phillips was trying to leave as Moya was coming towards him by backing up each time he was shooting. Phillips eventually left through the front door with Berry. As he was leaving the house to get help for Moya, Hardgraves recalled seeing a red Buick Century parked in front of the house after Phillips left and said it was the car in which he had previously installed a CD player.

A jury convicted Phillips of first-degree felony murder, two counts of aggravated robbery, and criminal possession of a firearm. He was sentenced to life in prison, with a mandatory minimum of 20 years and lifetime postrelease supervision for felony murder; a

consecutive 47 months for one attempted aggravated robbery conviction; a consecutive 34 months on the other attempted aggravated robbery conviction; and a concurrent 9 months for criminal possession of a firearm. Our jurisdiction is proper under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

Phillips raises five issues on appeal: (1) The district court erred by not instructing the jury on the lesser included offenses of second-degree murder and voluntary manslaughter and on self-defense; (2) the State failed to establish Moya's murder was committed during the commission of the underlying felonies; (3) the State committed prosecutorial misconduct during closing argument when it allegedly misstated the law; (4) the district court erred in admitting evidence showing Phillips fled from officers at an unrelated traffic stop and used an alias; and (5) his sentence imposing lifetime postrelease supervision is illegal. We decide all issues against Phillips except his sentencing argument. Additional facts will be provided as necessary.

## Jury Instructions

Our initial inquiry is whether the district court erred in not instructing the jury on the lesser included offenses of second-degree murder and voluntary manslaughter, and on self-defense. At the time Phillips shot Moya, the statute governing lesser included offenses, K.S.A. 21-3107, treated felony murder the same as other offenses. Thus, under K.S.A. 22-3414(3) lesser included offense instructions were to be issued if there was some evidence that would reasonably justify the conviction of the lesser included crime. *State v. Berry*, 292 Kan. 493, 513, 254 P.3d 1276 (2011) (overruling prior caselaw that exempted felony murder from K.S.A. 22-3414(3)'s requirements). But after Phillips was convicted, K.S.A. 21-3107 was amended to specify there are no lesser degrees of felony murder. See K.S.A. 2011 Supp. 21-5109(b)(1), as amended by L. 2012, ch. 157, sec. 2 (A lesser included crime is "[a] lesser degree of the same crime, except that there are no lesser degrees of murder in the first degree under subsection [a][2] [felony murder] of K.S.A. 2011 Supp. 21-5402."). No claim is made that this revision impacts the present analysis.

*Standard of Review*

Phillips argues that when reviewing a trial court's decision not to instruct the jury on lesser included offenses, this court must review the evidence in the light most favorable to the requesting party, citing *State v. Bell*, 276 Kan. 785, 792, 80 P.3d 367 (2003). But this standard applies only when an instruction was requested at trial or objected to. K.S.A. 22-3414(3). And that is not what happened in this case.

Phillips was alternatively charged with premeditated first-degree murder and felony murder for Moya's death. During the instructions conference, the State reluctantly acquiesced to Phillips' request to include second-degree intentional murder and voluntary manslaughter instructions as lesser included offenses for the first-degree premeditated murder charge. But following a brief recess, the State dismissed the first-degree premeditated murder charge and asked that the lesser included offense and self-defense instructions be deleted. The court agreed and presented counsel with a revised set of instructions, which did not include the lesser included offense and self-defense instructions.

Phillips' counsel did not object to the revisions except to claim that dismissal of the first-degree premeditated murder charge was prejudicial to the manner in which the defense had presented its case to the jury. That objection was overruled, and the court dismissed that charge.

The parties then began considering the court's proposed instructions. Defense counsel made no argument that lesser included offense instructions to felony murder should be added to those proposed instructions. And then at the conclusion of the conference, the district court made an instruction-by-instruction, itemized record of any objections to the final instructions the court proposed to give. Again, Phillips' counsel did not object, request lesser included offense or self-defense instructions, or make any argument that evidence of the underlying felony was weak.

In his appellate arguments, Phillips mischaracterizes what happened at the instructions conference as the district court's refusal to instruct the jury on lesser included offenses supported by the

evidence. In fact, the district court was not asked to give those instructions after the State dismissed the premeditated first-degree murder charge. Thus, there was no objection to the instructions as they were proposed by the court.

K.S.A. 22-3414(3) establishes a preservation rule for instruction claims on appeal. It provides that no party may assign as error a district court's giving or failure to give a particular jury instruction, including a lesser included crime instruction, unless: (1) that party objects before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds for the objection; or (2) the instruction or the failure to give the instruction is clearly erroneous. If an instruction is clearly erroneous, appellate review is not predicated upon an objection in the district court. *State v. Williams*, 295 Kan. 506, Syl. ¶ 3, 286 P.3d 195 (2012).

If the reviewing court determines the district court erred in giving or failing to give an instruction, then the clearly erroneous analysis moves to a reversibility inquiry, during which the court assesses whether it is firmly convinced the jury would have reached a different verdict had the instruction error not occurred. The party claiming the instructional error has the burden to establish the degree of prejudice necessary for reversal. *Williams*, 295 Kan. 506, Syl. ¶ 5.

Phillips makes no alternative argument that the jury would have reached a different verdict had the claimed instruction error not occurred. He relies only on a standard of review to which he is not entitled. The State argues for application of the clearly erroneous scrutiny as stated in our previous caselaw.

We will employ the analysis recently set out by this court in *Williams* for K.S.A. 22-3414(3) questions. The first step is to determine whether error occurred in the giving or failure to give an instruction. This is a question of law subject to unlimited appellate review. *Williams*, 295 Kan. at 516. And it is only after determining that the district court erred that we move to the second step and determine whether reversal is required, *i.e.*, whether we are firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. This involves a review of the

entire record and is a de novo determination. The burden to show clear error under K.S.A. 22-3413(3) remains on defendant. *Williams*, 295 Kan. at 516.

## Second-degree Murder Instruction

We begin with Phillips' assertion that the jury should have been instructed on second-degree murder. Second-degree murder is the "killing of a human being committed: (a) [i]ntentionally; or (b) unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 21-3402. On appeal, Philips does not specify whether he was entitled to an instruction on intentional second-degree murder, reckless second-degree murder, or both. Since Phillips claims the issue was preserved and second-degree intentional murder was the focus at the instructions conference before the premeditated murder charge was dismissed, we will focus our analysis there.

Second-degree intentional murder is different from first-degree intentional murder because it lacks the element of premeditation. *State v. Clark*, 261 Kan. 460, 467, 931 P.2d 664 (1997). Premeditation means to have "planned, contrived, schemed, and thought over the matter beforehand, although no particular amount of time must intervene between the time the killing is planned and the time it is consummated." *State v. Pabst*, 268 Kan. 501, 512, 996 P.2d 321 (2000) (premeditation inferred where no evidence of provocation, struggle over a gun, and when second shot fired after the first killed the victim, who was sitting down). But premeditation does not occur instantly. *State v. Cosby*, 285 Kan. 230, 248, 169 P.3d 1128 (2007).

Phillips' sole argument is premised on the claim that the district court should have permitted a second-degree intentional murder instruction because it had ruled earlier in the instruction conference that there was sufficient evidence to support that lesser included offense instruction for the premeditated murder charge. But the district court did not make specific findings on second-degree intentional murder. The transcript from the instructions conference shows only that a discussion was held after the court ruled that it would give the self-defense instruction, and the State

then reluctantly conceded that a second-degree intentional murder instruction should be given in light of that ruling. After the State's concession, the court replied by saying, "Okay," and moved to another issue. At the end of that preliminary instructions conference, the court indicated it would recess to give the parties more time to discuss some disputed issues and that the court would begin to prepare its proposed final instructions.

This was not a ruling on the merits about giving a second-degree intentional murder instruction, or even whether the evidence supported that instruction, because the court's instructions had not yet been prepared. In addition, the district court made clear during the instructions conference that it could still change its proposed final instructions based upon the parties' arguments.

More importantly, Phillips does not argue that the record demonstrated there was evidence that a second-degree murder instruction was warranted or that such evidence should firmly convince an appellate court that the jury would have returned a different verdict had it been instructed on it. In other words, Phillips makes no effort to satisfy his burden to show clear error as required by K.S.A. 22-3414(3). See *Williams*, 295 Kan. at 516. An appellant waives issues that are not briefed. *State v. McCaslin*, 291 Kan. 697, 709, 245 P.3d 1030 (2011).

## Voluntary Manslaughter Instruction

Phillips next claims the district court erred by not instructing the jury on voluntary manslaughter. Voluntary manslaughter is the "intentional killing of a human being committed (a) upon a sudden quarrel or in the heat of passion; or (b) upon an unreasonable but honest belief that circumstances existed that justified deadly force under K.S.A. 21-3211, 21-3212 or 21-3213 and amendments thereto." K.S.A. 21-3403. Arguments championing a voluntary manslaughter instruction have been denied by this court because the defendant failed to show evidence of an honest belief his or her actions were in self-defense. See, *e.g.*, *State v. Herron*, 286 Kan. 959, 969-70, 189 P.3d 1173 (2008) (Even though it was known victim was armed, there was no evidence victim fired first shot or

evidence to show defendant or anyone else believed lethal force was necessary.).

Once again, Phillips does not argue that the record demonstrated there was any specific evidence establishing that a voluntary manslaughter instruction was warranted or that such evidence should firmly convince an appellate court that the jury would have returned a different verdict had it been instructed on voluntary manslaughter. Again, this amounts to a failure by Phillips to meet the burden imposed by K.S.A. 22-3414(3) and a waiver of the arguments.

*Self-defense Instruction*

Phillips' last claimed error regarding jury instructions concerns the district court's failure to instruct on self-defense. Our analysis again is controlled by K.S.A. 22-3414(3).

"A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such force is necessary to defend such person or a third person against such other's imminent use of unlawful force." K.S.A. 21-3211(a). Self-defense based on justification or excuse and operates as a complete defense to a crime, and requires both an objective and subjective analysis. *State v. Cook*, 286 Kan. 1098, 1105, 191 P.3d 294 (2008); *State v. Kirkpatrick*, 286 Kan. 329, 339, 184 P.3d 247 (2008). The use of deadly force can only be justified when a person in the same circumstances would reasonably believe that the use of deadly force was necessary. K.S.A. 21-3211(b).

But self-defense does not apply to all defendants. K.S.A. 21-3214(1) provides that self-defense is not available to a person who "[i]s attempting to commit, committing, or escaping from the commission of a forcible felony." A "forcible felony" includes "any . . . felony which involves the use or threat of physical force or violence against any person." K.S.A. 21-3110(8) (enumerating some forcible felonies, including murder and robbery); see also *Kirkpatrick*, 286 Kan. at 335-36 (discussing unavailability of instruction for defendant who committed forcible felony); *State v. Ackward*, 281 Kan. 2, 26, 128 P.3d 382 (2006) (no error when jury instructed on felony-

murder charge that a person is not justified in using force in self-defense when attempting to commit a forcible felony).

Phillips was charged with committing aggravated robbery—a forcible felony. See K.S.A. 21-3110(8). Thus, a self-defense instruction was not applicable to the facts in this case. We hold the district court did not err in omitting a self-defense instruction.

### SUFFICIENCY OF EVIDENCE

Phillips was charged with felony murder based on the aggravated robberies of Hardgraves and Blanco. He argues there was insufficient evidence to uphold the felony-murder conviction because the State failed to prove beyond a reasonable doubt that he killed Moya during the commission of an attempted aggravated robbery. He argues the underlying felonies were complete once he took the money from Hardgraves and Blanco and that the "commission of" those crimes for the purposes of felony murder terminated before the shooting occurred. The State relies on this court's decision in *State v. Kaesontae*, 260 Kan. 386, 920 P.2d 959 (1996), to argue the risk of violence remained after Phillips robbed the two men and so there was not a sufficient break in the chain of events to constitute a termination of the aggravated robberies.

*Standard of Review*

When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *McCaslin*, 291 Kan. at 710.

*Discussion*

The felony-murder statute requires two elements of causation. First, the death must occur within the res gestae of the underlying felony. Second, there must be a direct causal connection between the felony and the homicide. Res gestae refers to acts that occurred " 'before, during, or after the happening of the principal occurrence when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence.' " *Berry*,

292 Kan. at 498. A direct causal connection exists unless an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death.

There are three factors examined in determining whether a direct causal connection is present: time, distance, and the causal relationship between the underlying felony and the killing. *Berry*, 292 Kan. at 500. This court rejected the defendant's insufficiency of the evidence argument in *Berry* after finding the three factors were satisfied. The time factor was satisfied because the defendant had cocaine in his possession when the fatal vehicle crash occurred, the distance factor was satisfied because the possession and the crash occurred at the same location, and the causal relationship factor was satisfied because it was foreseeable that a person possessing drugs would attempt to flee from police. *Berry*, 292 Kan. at 501.

As noted by the State, *Kaesontae* is pertinent. In that case, the defendant along with several acquaintances took two cars to rob someone. The victim, who was walking outside, was stopped by the lead car from which the defendant pointed a gun at him and asked for his wallet. The victim was pulled halfway into the vehicle and shot twice. This court found that the chain of events set in motion by the defendant when he attempted to rob the victim continued even after the defendant stopped trying to rob him. The court found the killing and the underlying felony were part of the same principal occurrence, even though they did not occur at precisely the same time. It applied the time, distance, and causal relationship factors and concluded the victim's killing was part of the attempted aggravated robbery. *Kaesontae*, 260 Kan. at 391; see also *State v. Branch and Bussey*, 223 Kan. 381, 383, 573 P.2d 1041 (1979) ("A felon's attempt to commit a robbery sets in motion a chain of events which should cause him to contemplate that a death might occur. This is particularly true of a robber who carries a deadly weapon [as these robbers did] and forces his way into an occupied dwelling.").

The underlying felony in this case was aggravated robbery. As stated above, aggravated robbery is the taking of property from the person or presence of another by threat of bodily harm to any

person or by force, committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery. K.S.A. 21-3426; K.S.A. 21-3427. The two causation elements are satisfied in this case.

The res gestae element is satisfied because Moya's murder occurred immediately after the happening of the principal occurrence—aggravated robbery—and thus became so closely connected with the principal occurrence as to form a part of the occurrence. A direct causal connection is also present. The time element is met because there was evidence the events happened quickly and that Phillips moved from his aggravated robbery of Blanco immediately to the bedroom where Berry struggled with Moya. The distance factor is satisfied because the aggravated robberies of Hardgraves and Blanco occurred in the same house where Moya was shot. Lastly, the causal relation is also satisfied because it is foreseeable that violence will erupt during an aggravated robbery in which the robber carries a gun.

The very nature of an aggravated robbery is violent. Moreover, Phillips stuck a potato on the end of his gun, indicating his preparation to silently shoot the gun. And as the *Branch* court similarly put it, Phillips set off a chain of violent events when he planned on robbing a house and brought a gun in furtherance of that plan. The elements of time, distance, and causal relationship were met. Accordingly, the evidence, when viewed in a light most favorable to the prosecution, was sufficient to establish beyond a reasonable doubt that the murder occurred during the res gestae of the aggravated robberies.

## PROSECUTORIAL MISCONDUCT

Phillips next argues that during closing arguments the prosecutor committed reversible misconduct and violated his right to a fair trial by misstating the law regarding when the aggravated robberies were completed. Phillips argues these errors "tainted the verdict" for the felony-murder charge, requiring reversal. Phillips did not object at trial, but he was not required to contemporaneously object to preserve his prosecutorial misconduct claim because com-

ments made during closing argument are not evidence. See *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

*Standard of Review*

This court employs a familiar two-step analysis when considering claims of prosecutorial misconduct. In the first step, the court determines whether the prosecutor's statements exceeded the wide latitude of language and manner afforded a prosecutor in making closing arguments. Second, the court determines whether the prosecutor's comments constituted plain error. Plain error occurs when the statements are so gross and flagrant that they prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. McCullough*, 293 Kan. 970, 985, 270 P.3d 1142 (2012).

The second step requires a harmlessness inquiry. Three factors are considered: (1) whether the misconduct was so gross and flagrant it denied the accused a fair trial; (2) whether the remarks showed ill will by the prosecutor; and (3) whether the evidence against the defendant was of such a direct and overwhelming nature that the prosecutor's statements would not have much weight in the jurors' minds. No individual factor controls. *McCullough*, 293 Kan. at 985 (citing *State v. Inkelaar*, 293 Kan. 414, 427, 264 P.3d 81 [2011]).

*Did the Prosecutor Misstate the Law?*

Phillips identifies three statements the prosecutor made during closing arguments informing the jury that the aggravated robberies were not completed until Phillips left the house. He claims these statements violated his right to a fair trial. When addressing whether Phillips committed felony murder based on the underlying aggravated robberies, the prosecutor stated:

"The underlying crimes, the underlying aggravated robbery, the underlying attempted robbery, those are not completed, *they are not over until at the very least the defendant leaves the house. The commission of those crimes is still going on while he is in that house. It doesn't end with the taking of the money or the attempting to take the money.*"

. . . .

". . . The fact remains that this defendant went to the house, committed two aggravated robberies, *and in the commission of those two robberies he kills, he murders Miguel Moya.*" (Emphasis added.)

Later in rebuttal, the State said:

"Ladies and gentlemen, *the crime is still going on, they have not exited this house, they have not left this house, the commission of this crime is not completed.* There has been no withdrawal under the law. They have not taken any affirmative action to withdraw themselves from this crime. *And the law says until they withdraw from the crime, the crime is not completed. So the crimes of aggravated robbery or attempted aggravated robbery aren't completed until they are going out the front door."* (Emphasis added.)

Phillips claims these statements misled the jury and incorrectly informed it that the aggravated robberies were not complete until Phillips withdrew by leaving the house. We agree that the prosecutor misstated the law on robbery to the extent she informed the jury that the aggravated robberies were not completed until Phillips left the house.

Aggravated robbery is the taking of property from the person or presence of another by force or by threat of bodily harm, committed by a person who is armed with a dangerous weapon or who inflicts bodily harm, upon any person in the course of such robbery. K.S.A. 21-3426; K.S.A. 21-3427. This court has previously held "commission of robbery is complete when the robber takes possession of [the] property." *State v. Valdez,* 266 Kan. 774, 785, 977 P.2d 242 (1999), *abrogated on other grounds by State v. James,* 276 Kan. 737, 79 P.3d 169 (2003). Contrary to this rule, the prosecutor here claimed the crimes of aggravated robbery were not complete until Phillips left through the front door, even though Phillips had already taken possession of the money.

The State disputes that the prosecutor was referencing when the aggravated robberies were completed. It maintains the prosecutor's statements were addressing whether the homicide occurred during the commission of the felonies. The State argues the statements were consistent with the legal principles regarding felony murder's res gestae element, which as discussed above means acts "done before, during, or after the happening of the principal occurrence when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence." *Berry,* 292 Kan. at 498.

But the prosecutor narrowly framed her argument in closing, referring in rebuttal only to the completion of the aggravated robberies, and not contending that Phillips could still be in the "commission of" the aggravated robberies for purposes of the felony-murder charge. The prosecutor's argument provided more time for the completion of the aggravated robberies, and her remarks were a misstatement of that law. The aggravated robberies were complete once Phillips retrieved the $40 from Hardgraves and the $450 from Blanco.

Taken in context of the entire closing argument by the State, this misstatement seems to stem from the prosecutor's mistaken belief that the aggravated robberies could not be completed in order for the murder to be committed "in the commission of" the felonies. But as discussed above, this court examines whether the homicide occurred within the res gestae of the felonies and whether there was a direct causal connection when determining if the homicide was in the commission of the felonies. Under that analysis, it is not necessarily relevant that the aggravated robberies were completed once Phillips took possession of the money.

The State's misstatements of the law require us to address the second prong of the analysis before determining whether reversal is warranted. If the defendant establishes error of a constitutional magnitude, the State—as the benefiting party to the error—has the burden of proving beyond a reasonable doubt that the error did not affect the defendant's substantial rights. *State v. Anderson*, 294 Kan. 450, 461-62, 276 P.3d 200 (2012) (citing *State v. Hall*, 292 Kan. 841, Syl. ¶ 15, 257 P.3d 272 (2011); *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]), *cert. denied* 132 S. Ct. 1594 (2012).

In this case, the prosecutor's misstatement that the aggravated robberies were not completed until the defendant left the house contradicts this court's prior statements that a robbery is complete when the defendant takes the money. Thus, the statement may be considered gross and flagrant. See *McCullough*, 293 Kan. at 991 (The prosecutor's statement that anger cannot constitute heat of passion contradicted repeated statements by this court and was thus considered gross and flagrant.). But there is no other indica-

tion in the record that the prosecutor's misstatements constituted ill will. The statements were not overemphasized, they were not made in defiance of court rulings, and the prosecutor exhibited no other behavior suggesting ill will. In fact, it appears to stem from the prosecutor's own misunderstanding of the law.

We further conclude that there is no reasonable possibility the misconduct affected the verdict. Phillips admitted to shooting Moya after confessing to at least one of the aggravated robberies— taking money out of Hardgraves' pocket. Moreover, the jury was provided the correct instruction for felony murder:

"Michael E. Phillips is charged with the offense of murder in the first degree— felony murder. He pleads not guilty.

"To establish this charge, each of the following claims must be proved:

That Michael E. Phillips killed Miguel G. Moya;

That such killing was done while in the commission of an Aggravated Robbery, Attempted Aggravated Robbery, Robbery, or Attempted Robbery.

That this act occurred on or about the 19th day of November 2007 in Sedgwick, County, Kansas."

This instruction, fashioned from PIK Crim. 3d 56.02 (felony-murder), properly instructed the jury and fairly stated the law for the elements of the crime. See *State v. Bailey*, 292 Kan. 449, 456, 255 P.3d 19 (2011) (citing *State v. Jackson*, 280 Kan. 541, 550-51, 124 P.3d 460 [2005]). While we find misconduct, that misconduct was harmless. Phillips' claim on this issue fails.

## ADMISSIBILITY OF FLIGHT AND ALIAS EVIDENCE

The State filed a pretrial motion to admit evidence of flight and alias, citing Phillips' conversation with police in which he said he knew he had an outstanding arrest warrant for murder at the time he was pulled over 8 months after the shooting. The district court allowed the evidence to be admitted over Phillips' numerous objections before and during trial. Now on appeal, Phillips argues the district court erred in admitting evidence that he ran from a traffic stop several months after the shooting and then provided a fake name to police.

*Standard of Review*

A trial court has discretion to admit evidence of flight. *State v. Ross*, 280 Kan. 878, 882, 127 P.3d 249, *cert. denied* 548 U.S. 912 (2006). It likewise has discretion to admit evidence of alias, so long as the evidence is relevant. *Cf. State v. Higgenbotham*, 264 Kan. 593, 603-04, 957 P.2d 416 (1998). A district court's decision to admit the evidence is reviewed by an appellate court under an abuse of discretion standard. Judicial discretion is abused if judicial action is: (1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *McCullough*, 293 Kan. at 980-81.

In reviewing a decision to admit evidence, appellate courts consider first whether the evidence is relevant. *State v. Riojas*, 288 Kan. 379, 382, 204 P.3d 578 (2009). Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). Relevance is established by a material or logical connection between the asserted facts and the inference or result they are intended to establish. *Riojas*, 288 Kan. at 383. If the court finds the evidence is relevant, the second step requires the court to apply the statutory rules governing the admission or exclusion of evidence. The court's application of those rules is reviewed under an abuse of discretion standard. *Riojas*, 288 Kan. at 383.

*Discussion*

Evidence of a defendant's flight or attempted flight may be relevant to show both the commission of the acts charged and the intent and purpose for which those acts were committed. *State v. Walker*, 226 Kan. 20, 21-22, 595 P.2d 1098 (1979); *State v. Townsend*, 201 Kan. 122, 125, 439 P.2d 70 (1968) (flight following robbery may be considered as evidence); see also *Ross*, 280 Kan. at 885 (Kansas caselaw permits the admission of such evidence without restriction.).

We hold that the flight evidence was relevant. The facts are akin to *Walker* in that there was evidence the elusive defendant knew he was being sought by police. While such evidence of knowledge by the defendant is not required and merely goes to the weight of the evidence, once established it may certainly create a logical connection that the fleeing was a result of guilty consciousness. *Walker*, 226 Kan. at 25. Accordingly, evidence of Phillips' flight from a traffic stop was relevant.

Moving to admissibility, the rules of evidence do not specifically address the admission of evidence regarding the defendant's flight or attempted flight. See K.S.A. 60-401 *et seq.* Thus, the more general statute, K.S.A. 60-445, applies to the district court's decision to admit or exclude such evidence, depending on whether its probative value is substantially outweighed by its prejudicial effect.

Evidence of flight after the commission of a crime is generally admissible regardless of the time or stage in the proceedings when the flight occurs. There is no requirement that flight must occur immediately after the commission of a crime. It may occur before filing formal charges, before arrest, after indictment, or after arrest. Direct proof that the accused had knowledge of his or her possible arrest is not necessary, particularly when there is evidence from which such fact may be inferred. *Walker*, 226 Kan. at 22.

In *Walker*, the defendant argued evidence of his flight was prejudicial to him and warranted a new trial. When officers arrived at the defendant's house to question him 4 days after an aggravated robbery, Walker fled and eluded police for 3 months. On appeal, the court held the evidence was admissible to show evidence of guilt, with no requirement of actual knowledge that defendant knew he was being sought by police. Such evidence merely goes to the weight of the evidence, particularly when the flight occurs soon after the crime. The court further noted greater caution might be given when the flight occurred months after a crime, but even then the evidence could be admitted for consideration by the jury, which might give it less weight given the time lapse. *Walker*, 226 Kan. at 24, see also *Ross*, 280 Kan. at 884-85 (proof defendant knew he was being sought not required); *State v. Webber*, 260 Kan. 263, 274, 918 P.2d 609 (1996) (admission of defendant's flight to

Louisiana under an assumed name, her use of a disguise, and her attempt to secure employment there was not abuse of discretion), *cert. denied* 519 U.S. 1090 (1997).

We hold that the evidence of Phillips' flight from officers during the traffic stop was not more prejudicial than probative and was admissible at trial. And even though Phillips told detectives he knew there was an arrest warrant out for him, this fact is not required to uphold the admission of flight evidence.

The admission of Phillips' alias, Eric Brown, was similarly admissible to show Phillips' behavior during the criminal investigation and was also relevant to demonstrate consciousness of guilt and identity. Under K.S.A. 60-445, the district court has broad discretion to determine admissibility based on relevancy and whether the probative value outweighs any prejudicial effect. *State v. Preston*, 294 Kan. 27, 32-33, 272 P.3d 1275 (2012). And evidence of use of an alias is relevant. In *Higgenbotham*, for example, the State introduced evidence that the defendant obtained an Arizona driver's license under a different name some months after allegedly committing murder. This court held the admission of this evidence was not error because the defendant's obtaining a fraudulent Arizona license was relevant to both the identity issue and his behavior during the criminal investigation. *Higgenbotham*, 264 Kan. at 604.

An alias tending to show Eric Brown was a name Phillips used was also material because it showed the possibility that it was Phillips who kept calling the house under the Caller ID "Michael Brown" to speak with Berry. Although the first names are different, the district court's decision is reviewed for an abuse of discretion. On one hand some may argue the alias suggests Phillips previously assumed the names Eric Brown and Michael Brown. On the other hand, there is an argument that because the first names are different it is not the same person. The point remains that reasonable persons could differ as to the meaning of this evidence and it is a jury question, so there was no abuse of discretion.

## LIFETIME POSTRELEASE SUPERVISION

Phillips next challenges the legality of the trial court's imposition

of lifetime postrelease supervision for the off-grid felony-murder conviction.

This court has previously decided this issue, concluding that " '[a]n inmate who has received an off-grid indeterminate life sentence can leave prison only if the successor to the Kansas Parole Board grants the inmate parole. Therefore, a sentencing court has no authority to order a term of postrelease supervision in conjunction with an off-grid indeterminate life sentence.' " *State v. Summers*, 293 Kan. 819, 832, 272 P.3d 1 (2012) (quoting *State v. Cash*, 293 Kan. 326, Syl. ¶ 2, 263 P.3d 786 [2011]).

Phillips was sentenced to an off-grid crime after July 1, 1999, and the State concedes the trial court erred in sentencing Phillips to lifetime postrelease supervision rather than to a term with the possibility of parole. Accordingly, this portion of Phillips' sentence is vacated.

Affirmed in part and vacated in part.