NOT DESIGNATED FOR PUBLICATION

No. 116,151

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHARLES D. SATCHELL,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed December 15, 2017. Affirmed in part, vacated in part, and remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., SCHROEDER, J., and HEBERT, S.J.


PER CURIAM: Charles D. Satchell appeals his convictions and sentences after a jury found him guilty of one count of criminal sodomy, one count of rape, two counts of aggravated indecent liberties with a child, and five counts of aggravated criminal sodomy. Satchell contends that the district court erroneously admitted evidence of his prior sexual misconduct and that it erred in denying his motion to suppress statements he had made to law enforcement in the prior case. Satchell also contends that the district court erred in denying his motion for downward departure, by imposing eight consecutive Jessica's law hard 25 life sentences, and by imposing lifetime postrelease supervision.

1

Finally, he contends that the sentencing journal entry is inconsistent with the sentence announced from the bench regarding the reimbursement of the Board of Indigents' Defense Services (BIDS) attorney fees. Although we vacate the portion of the sentencing journal entry regarding BIDS attorney fees and direct that the district court enter an order nunc pro tunc, we affirm Satchell's convictions and sentences in all other respects.

FACTUAL AND PROCEDURAL HISTORY

Because Satchell does not challenge the sufficiency of the evidence presented against him at trial, we will only briefly summarize the facts of this case. In September 2014, D.S. and Z.S. told their mother that Satchell had been touching them in an inappropriate manner. The mother contacted the Wichita Police Department, and the department submitted the case to the Exploited and Missing Children's Unit for investigation. Detective Chris Zandler interviewed D.S. and Z.S. regarding the alleged sexual abuse. Detective Zandler also interviewed Satchell and his former girlfriend, Jessica Chambers.

On April 30, 2015, the State charged Satchell with one count of criminal sodomy, one count of rape, two counts of aggravated indecent liberties with a child, and five counts of aggravated criminal sodomy. The initial charging document listed Chambers as a codefendant. However, the district court eventually granted Satchell's motion to hold his jury trial separate from Chambers' trial.

On June 5, 2015, the State filed a motion for admission of evidence pursuant to K.S.A. 2014 Supp. 60-455(d), requesting to admit evidence of Satchell's prior actions of sexual conduct against children. Specifically, the State sought to admit the underlying facts in Sedgwick County case No. 11CR197, in which the State had previously charged Satchell with one count of rape and two counts of aggravated indecent liberties with a child. In the prior case, a plea agreement resolved the charges, and Satchell was found

2

guilty of one count of aggravated battery and one count of endangerment of a child. The victims in that case were a seven-year-old girl and an eight-year-old boy. Subsequently, Satchell filed a motion in limine, in this case, to exclude evidence of his prior bad acts in general, contending that the evidence was unduly prejudicial.

The district court held a pretrial hearing on March 11, 2016—at which it heard arguments on several pending motions—including the State's motion to admit evidence of Satchell's prior sexual misconduct under 60-455(d) and Satchell's motion in limine. Ten days later, the district court granted the State's motion regarding the admissibility of the prior sexual misconduct evidence under 60-455(d) and denied Satchell's motion in limine. Specifically, the district court determined that the evidence was admissible because the State accused Satchell of a sex offense under Chapter 21, Articles 35 and 55.

The district court further found that the evidence was relevant because it supported the disputed fact of Satchell's propensity to commit acts of sexual misconduct against minors, as charged in this case. The district court next found that the evidence the State sought to admit was probative because it had a logical tendency to prove a material fact. In particular, the district court found that it proved Satchell's propensity to commit acts of sexual misconduct against children. The district court also went through each of the four factors for determining whether the probative value of the State's evidence outweighed the prejudicial effect of the evidence. Finally, the district court found that Satchell's plea agreement in the prior case did not prohibit the State from introducing evidence of the prior sexual misconduct.

Ultimately, the district court held a jury trial in this case from March 22, 2016, through March 25, 2016. At trial, the State presented the testimony of 11 witnesses— including D.S. and Z.S—and introduced 11 exhibits into evidence. Two of the exhibits— video recordings of Detective Zandler's interviews with D.S. and Z.S.—were also played

3

for the jury. Furthermore, over Satchell's objection, the State called the three victims from the 2011 case to testify.

On the third day of trial, the district court held a *Jackson v. Denno* hearing—outside of the presence of the jury—regarding the admissibility of the statements he had made to law enforcement in his prior case. In particular, the district court heard testimony from two law enforcement officers who had interviewed Satchell in 2011. According to their testimony, Satchell was not under arrest at the time of either of these interviews. At the end of the first interview, Satchell agreed to take a polygraph examination.

The special investigator with the Kansas Bureau of Investigation who conducted Satchell's polygraph examination also testified at the *Jackson v. Denno* hearing. He testified that he conducted the polygraph examination on January 20, 2011, after Satchell had been informed of his *Miranda* rights. The special investigator testified that Satchell responded "no" to the questions regarding sexual misconduct with a seven or eight-year old girl but that these were failing responses. After the special investigator told Satchell about the results of the polygraph test, Satchell admitted that he touched the girl's vaginal area for approximately a minute at her uncle's swimming pool. Satchell also provided a written statement to that effect.

After hearing the evidence at the *Jackson v. Denno* hearing—as well as after viewing the videos from the interview and the polygraph test—the district court determined that the statements Satchell made during his interview with law enforcement and at the polygraph test were freely and voluntarily given. Accordingly, the district court found that evidence regarding Satchell's statements to law enforcement officers was admissible at trial. After several more witnesses, the State rested.

The district court denied Satchell's motion for a judgment of acquittal, and the defense presented its case. Satchell took the witness stand in his own defense and denied

4

the allegations from the 2011 case as well as the allegations in this case. He testified that he only wrote the statement in the 2011 case, in which he admitted to inappropriately touching a minor, because the special investigator gave him the scenario and he wanted the questioning to stop. Satchell also testified that he entered a plea in the prior case so he could get out of jail.

Satchell also called his mother as a defense witness. She testified that she knew D.S. and Z.S. as well as their parents. She testified that the two boys were at her house quite regularly from 2010 to the present time, but they did not say anything to her about Satchell molesting them. Moreover, she testified that she never saw the boys upset or agitated other than if they were in an argument with each other or with her grandson. Satchell's mother also testified that she never saw any inappropriate behavior between Satchell and the boys. She further opined that she believed both the boys were untruthful and that they had a general reputation in the community as being untruthful.

On the final day of trial, the district court instructed the jury and the attorneys presented their closing arguments. After deliberations, the jury found Satchell to be guilty on all of the charges. Subsequently, Satchell filed a motion for a new trial and judgment of acquittal. Satchell also filed a motion for a downward dispositional and/or durational departure sentence. The district court denied both motions and sentenced Satchell to 100 months of imprisonment on his criminal sodomy conviction to run consecutive to eight consecutive life sentences for his two aggravated indecent liberties with a child, one rape, and five aggravated criminal sodomy convictions. In addition, the district court imposed lifetime postrelease supervision on the 100-month sentence and lifetime parole for the eight hard 25 life sentences.

ANALYSIS

*Admission of K.S.A. 2016 Supp. 60-455(d) Evidence*

On appeal, Satchell contends that the district court erred allowing the State to introduce evidence at trial of his prior sexual misconduct involving minors. When reviewing a district court's decision to admit evidence, we generally first have to determine whether the evidence is relevant. *State v. Phillips*, 295 Kan. 929, 947, 287 P.3d 245 (2012). Evidence is relevant if it has a "tendency in reason to prove any material fact." K.S.A. 60-401(b). Here, Satchell admits that the evidence at issue is relevant.

Next, we apply the statutory provisions governing the admission and exclusion of evidence. See *Phillips*, 295 Kan. at 947. Here, the district court found that the prior crimes evidence in this case was admissible under K.S.A. 2016 Supp. 60-455(d), which states:

> "Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or articles 54, 55 or 56 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 2016 Supp. 21-6104, 21-6325, 21-6326 or 21-6419 through 21-6422, and amendments thereto, *evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative*." (Emphasis added.)

Satchell does not argue that the evidence fails to fall under the statutory standard, and we have no difficulty finding that the evidence of his prior sexual misconduct with minors is both relevant and probative in light of the allegations asserted against him in this case. However, Satchell does challenge the district court's determination that the probative value of the evidence of his prior sexual misconduct acts outweighed its prejudicial effect. Although it is not a requirement set forth in the clear and unambiguous

language of the statute, courts often weigh the probative value of otherwise admissible 60-455(d) evidence against its prejudicial effect. See *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014) (weighing probative value and prejudicial effect); *State v. Prine*, 297 Kan. 460, 478, 303 P.3d 662 (2013) (stating that the court would leave to another day the question of whether this weighing persists under 60-455[d]).

We review whether the probative value of otherwise admissible evidence outweighs its potential for undue prejudice under an abuse of discretion standard. *Bowen*, 299 Kan. at 348. "A district court abuses its discretion when: (1) no reasonable person would take the view adopted by the judge; (2) a ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion is based." 299 Kan. at 348. When weighing the probative value of 60-455(d) propensity evidence against its potential for causing undue prejudice to a defendant in a sexual abuse case, the following questions should be considered:

> "'1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely it is such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.' [Citations omitted.]" *Bowen*, 299 Kan. at 350 (quoting *United States v. Benally*, 500 F.3d 1085, 1090-91 [10th Cir. 2007]).

Satchell's primary argument appears to be that because his prior convictions were not sex crimes, allowing evidence regarding the allegations in that case during the trial of this case was unduly prejudicial to him. Evidently, he would have us ignore the fact that he confessed to inappropriately touching one of the victims in the prior case—specifically, he admitted to rubbing a seven or eight-year old girl's vaginal area. As the Kansas Supreme Court has found, even evidence of prior uncharged sexual misconduct

that is based only on the statements of alleged victims may be admitted into evidence in another case in which a defendant is accused of a sex offense. See *Prine*, 297 Kan. at 480-81 (affirming the district court's admission of evidence at trial of defendant's prior sexual misconduct with two victims based on their statements that defendant had sexually abused them in the past); *State v. Spear*, 297 Kan. 780, 788-89, 304 P.3d 1246 (2013) (affirming district court's decision to allow the victim to testify at trial about prior uncharged sexual conduct defendant committed against her); *State v. Gonzalez-Sandoval*, 53 Kan. App. 2d 536, 574-75, 390 P.3d 84 (2017) (same).

Here, the State called the alleged victims in Satchell's prior sexual misconduct case as witnesses during his trial in this case, and his attorney had the opportunity to cross-examine them. The State presented evidence regarding the law enforcement investigation of the prior claims of sexual misconduct. As noted above, the State also produced evidence regarding Satchell's confession to inappropriately touching one of the minor victims.

As the party alleging that the district court abused its discretion, Satchell has the burden of proof. See *State v. Ashley*, 306 Kan. 642, 650, 396 P.3d 92 (2017); *State v. Inkelaar*, 293 Kan. 414, 425, 264 P.3d 81 (2011), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). Based on our review of the record on appeal, we do not find that the district court abused its discretion when it determined the evidence of the alleged prior sexual misconduct with minors was not unduly prejudicial. Rather, a review of the record reveals that the district court weighed the appropriate factors, thoughtfully considered the issue, and ruled in a reasonable manner given the allegations that Satchell had sexually targeted children of approximately the same age. Moreover, we find the other evidence in the record as to Satchell's guilt to be strong, and we have no reason to believe that the evidence of Satchell's prior sexual misconduct with one or more minors caused the jury to reach the wrong result in this case. Thus, we do not find that district court erred.

*Denial of Motion to Suppress*

Next, Satchell contends that the district court erred in denying his motion to exclude evidence regarding statements he had made to law enforcement officers during the investigation of his prior case involving allegations of sexual misconduct against minors. In particular, Satchell claims that he did not voluntarily and knowingly make the statements. Based on our review of the record on appeal, we disagree.

Because a district court's ruling on a motion to suppress evidence usually presents a mixed question of fact and law, we use a dual standard when reviewing that decision on appeal. First, we determine whether substantial competent evidence supports the facts underlying the district court's decision on a suppression motion. In conducting this review, we refrain from reweighing evidence, assessing the credibility of witnesses, or resolving conflicts in the evidence. Second, we conduct a de novo review of the legal conclusion reached by the district court. *State v. Garcia*, 297 Kan. 182, 186-87, 301 P.3d 658 (2013).

When a defendant challenges the voluntariness of statements made to law enforcement officers, the State has the burden to prove—by a preponderance of the evidence—that the statements were voluntarily made. To determine whether a statement was voluntarily given, courts look at the totality of the circumstances surrounding the statement to determine whether it was voluntary or coerced. 297 Kan. at 188. To assist in this determination, we look to the following nonexclusive list of factors:

> "'(1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language.'" 297 Kan. at 188 (quoting *State v. Robinson*, 293 Kan. 1002, Syl. ¶ 7, 270 P.3d 1183 [2012]).

9

Courts do not simply weigh these factors against one another. Instead, courts must take into consideration the totality of the circumstances leading up to the statement or confession. 297 Kan. at 188.

Additionally, our hearsay statute discusses statements and confessions made in a criminal case. In particular, the statute provides the following exception to the general rule regarding the inadmissibility of hearsay evidence at trial:

> "In a criminal proceeding as against the accused, a previous statement by the accused relative to the offense charged [is admissible], but only if the judge finds that the accused (1) When making the statement was conscious and was capable of understanding what the accused said and did; and (2) was not induced to make the statement: (A) Under compulsion or by infliction or threats of infliction of suffering upon the accused or another, or by prolonged interrogation under such circumstances as to render the statement involuntary; or (B) by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same." K.S.A. 2016 Supp. 60-460(f).

Here, Satchell challenges the admissibility of his statements made to a KBI Special Investigator on January 20, 2011. On that date, Satchell voluntarily appeared at the KBI office in Wichita for a polygraph examination. He argues that the statements he made were involuntary due to the manner and duration of the encounter. However, a review of the record on appeal reveals that Satchell was only a suspect at that time and had agreed to participate in the examination. Even though he was not in custody, Satchell received his *Miranda* warnings, including that he had a right to refuse to participate or terminate the encounter at any time. See *State v. Warrior*, 294 Kan. 484, 496, 277 P.3d 1111 (2012) (stating that "law enforcement officers are not required to administer *Miranda* warnings to everyone questioned, only to those who are [1] in custody and [2] subject to interrogation"); *State v. Jacques*, 270 Kan. 173, 186, 14 P.3d 409 (2000) (*Miranda* warnings are not required for noncustodial questioning).

10

Satchell further argues that the encounter lasted more than two hours and that it was confrontational in nature. Again, Satchell agreed to participate and never withdrew his decision to do so despite receiving a notice that he could. We agree with the district court that Satchell's encounter with the KBI Special Investigator, based on the allegations in this case, was not excessively long. See *State v. Mattox*, 305 Kan. 1015, 1045-46, 390 P.3d 514 (2017); *State v. Walker*, 283 Kan. 587, 597, 153 P.3d 1257 (2007); *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006). Likewise, Satchell has not challenged the finding of fact made by the district court—which watched the video from the examination—that the Special Investigator was polite and was not confrontational during the encounter, even when posing direct questions to Satchell.

Next, Satchell argues that he did not voluntarily make his statements due to his age, intellect, and background. At the time of the encounter, Satchell was 20 and was old enough to make decisions on his own. Although Satchell had evidently dropped out of school after the eighth grade, we find nothing in the record to suggest that he lacked the ability to understand his rights. Moreover, by the time of his encounter with the Special Investigator, a police detective had already interviewed Satchell and he was not unfamiliar with police questioning. Hence, we do not find that Satchell's age, intellect, or background rendered his statements to the Special Investigator to be coerced or otherwise involuntary.

Satchell also argues that his meeting with the Special Investigator was conducted in an unfair manner. Specifically, Satchell complains that he was told that the information he provided could not be used against him at trial. However, a review of the record reveals that he received his *Miranda* rights prior to the Special Investigator's questioning. As such, Satchell received notice that any statements he made could be used against him at trial. After being so advised, he voluntarily agreed to go forward with the meeting. Moreover, the Special Investigator correctly informed Satchell that the results of the

11

polygraph examination were not admissible in court. Hence, the record does not support Satchell's allegation that the Special Investigator acted unfairly.

In conclusion, we find that there is substantial competent evidence to support the district court's conclusion that the State met its burden to prove—by a preponderance of the evidence—that Satchell's statements to law enforcement officers in his prior case were knowingly and voluntarily made.

*Denial of Motion for Departure*

Satchell also contends that the district court abused its discretion in denying his motion seeking a downward dispositional and/or durational departure. We review the district court's denial of a motion for departure for an abuse of discretion. *State v. Jolly*, 301 Kan. 313, 324-25, 342 P.3d 935 (2015). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Under Jessica's Law, the presumptive sentence for a defendant who is 18 years or older and convicted of rape of a child, aggravated criminal sodomy of a child, or aggravated indecent liberties with a child is life in prison with no possibility of parole for 25 years. K.S.A. 2016 Supp. 21-6627(a)(1)(B), (C), (D). The district court must impose the presumptive sentence "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2016 Supp. 21-6627(d)(1). Because K.S.A. 2016 Supp. 21-6627(d) mentions "mitigating circumstances" but not aggravating circumstances, our Supreme Court has found that a sentencing court should not weigh "aggravating circumstances against the mitigating circumstances" in determining whether a departure motion should be granted. *Jolly*, 301 Kan. at 321.

Based on the plain language of the statute, however, a sentencing court is not required to simply accept alleged mitigating circumstances to be true. Moreover, a sentencing court is not required to weigh the mitigation circumstances separate and apart from the facts of the case. Rather, as our Supreme Court recognized in *Jolly*, consideration of "the facts of the case—including any egregious ones—are essential for a judge to consider in deciding if a departure is warranted based on substantial and compelling reasons." 301 Kan. at 323-24. Thus, "considering the facts of the case, the court determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence." 301 Kan. at 324.

A review of the record on appeal reveals that although the district court considered the departure motion at the sentencing hearing, Satchell rested on his written motion. In response, the State asked the district court to deny Satchell's motion because he demonstrated an ongoing course of behavior of sexual misconduct against children as an adult. The State argued that Satchell cultivated friendships with children in order to have access to them and pointed out that Satchell was still on probation in his prior case when he committed the offenses in this case. The State noted that Satchell had caused a great deal of harm to the victims in this case. Finally, the State noted that, although one of the departure factors Satchell relied on was that he had the support of his family, he was residing with his mother when he committed a number of the crimes underlying his convictions.

In denying the motion, the district court stated:

"I am going to deny the defense motion to impose dispositional or durational departure as it pertains to Count 1 and then as it pertains to Counts 2 through 9. I am finding that there is not a sufficient legal basis for a departure. I'm finding, also, that there is no substantial and compelling reasons to depart.

13

"I believe in regard to, I guess, the one aspect that the State referred to, which was the supportive family, I would join the State in that argument, I guess, or that finding or position.

"Additionally, . . . I will note that that criminal history involved children, and it was a plea and conviction to non-sex crimes, but I heard the facts that supported that in this case.

"And so for those reasons, as well as others, I'm going to deny the motion. I am following the legislative directive. I'm following the presumption in this case."

Accordingly, we conclude that the district court did not commit an error of law in considering the alleged mitigating circumstances and facts of this case—many of which are egregious. Likewise, we conclude that the district court's conclusion that the alleged mitigating circumstances did not rise to the level of substantial and compelling reasons to depart was reasonable under the circumstances presented in this case. Accordingly, we find no abuse of discretion by the district court in denying Satchell's departure motion.

*Ordering of Consecutive Hard 25 Life Sentences*

Next, Satchell contends that the district court abused its discretion in ordering that his eight hard 25 life sentences under Jessica's Law run consecutive to each other. The district court has discretion to order concurrent or consecutive sentences in multiple conviction off-grid cases. K.S.A. 2016 Supp. 21-6819(b). We review the district court's decision to order consecutive sentences for an abuse of discretion. *State v. Frecks*, 294 Kan. 738, 741, 280 P.3d 217 (2012). As indicated above, discretion is abused if no reasonable person would have taken the view adopted by the district court or the district court's decision was based on an error of fact or law.

"It is the sentencing judge alone who determines the appropriate sentence to be imposed or other disposition of the case by exercising his or her best judgment, common

14

sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, and the public safety. A sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive." *State v. Vanderveen*, 259 Kan. 836, 842-43, 915 P.2d 57 (1996).

In other words, it is not the role of this court to replace its judgment for that of a sentencing court so long as the sentence was legal and was not imposed for an improper motive.

Satchell suggests that no reasonable person would have imposed eight hard 25 life sentences because it has the practical effect of sentencing him to life without possibility of parole. However, we do not find that this necessarily means that the district court abused its discretion in imposing an otherwise legal sentence. Moreover, the fact that the Satchell's sentence is greater than he will ever be able to serve does not, in itself, make the sentence excessive. See *State v. Pham*, 281 Kan. 1227, 1265, 136 P.3d 919 (2006) (defendant's 16 consecutive sentences totaling life imprisonment followed by 1,306 months was not an abuse of discretion or excessive).

Satchell also argues that the Kansas Legislature has reserved a sentence to life without possibility for parole for aggravated habitual sex offenders and those convicted of capital murder. Nevertheless, our Supreme Court has found:

"The fact that the penalty for certain categories of homicide may be less severe than the penalties for other, nonhomicide crimes does not automatically render the penalties for the nonhomicide crimes unconstitutional. There is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and all nonhomicides as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment.

15

"Furthermore, as the State points out, Jessica's Law is not the only Kansas statute that provides for more severe penalties for nonhomicide crimes than for certain categories of homicide." *State v. Woodard*, 294 Kan. 717, 723, 280 P.3d 203 (2012).

Here, the district court's ruling was thorough and took into consideration the nature of the crimes. At the sentencing hearing, the district court heard from the attorneys, from Satchell, and from the grandmother of the victims before imposing the sentences. After doing so, the district court found:

"This is as bad of a case in terms of victimization that I have seen; at least seen in a long time. The destruction that has been done to these children, hopefully, is repairable. But after spending two years out at juvenile, I have fears about what's going to happen to them. But it's my hope, that with treatment and counseling and with family support, that those kids can recover, I guess, so. I appreciate the family being here, because we all recognize it's going to be a long road, so."

We agree with the district court's analysis regarding the severe nature of Satchell's crimes. Specifically, it is significant that Satchell committed eight violations of a Jessica's Law crime against two separate minor victims over the course of several years. In addition, there is evidence in the record that he had fantasies about having sex with children. Moreover, Satchell involved another person—his then girlfriend—in his sexual misconduct with children.

Although we recognize that reasonable minds may differ over this issue, we do not find that the district court abused its discretion. Rather, we find that Kansas appellate courts have been reluctant to reverse or vacate a sentence if reasonable people might agree with the sentence imposed. Here, the district court explained its reasons for imposing consecutive hard 25 life sentences, and we find nothing in the record on appeal to suggest that the district court acted vindictively or with another improper motive. Thus, we conclude the district court did not abuse its discretion by ordering Satchell to

16

serve eight consecutive hard 25 life sentences under the circumstances presented in this case.

*Imposition of Lifetime Postrelease Supervision*

Satchell further contends that the district court illegally sentenced him to serve both lifetime postrelease supervision and lifetime parole. Whether a sentence is illegal is a question of law over which this court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). An illegal sentence is a sentence imposed by a court without jurisdiction; a sentence that does not conform to the applicable statutory provision, either in character or term of authorized punishment; or a sentence that is ambiguous with respect to the time and manner in which it is to be served. *State v. Gray*, 303 Kan. 1011, 1014, 368 P.3d 1113 (2016).

In support of his argument, Satchell cites an unpublished opinion from a panel of this court that found that a district court imposed an illegal sentence when it imposed both lifetime postrelease supervision and lifetime parole. *State v. Herndon*, No. 107,064, 2013 WL 452138, at *4 (Kan. App. 2013) (unpublished opinion). In that case, however, the State conceded that the imposition of lifetime postrelease supervision was erroneous. 2013 WL 452138, at *4. In *Herndon*, the State conceded to this issue based on the facts presented in that case—one in which the defendant was convicted of two counts of rape and two counts of aggravated criminal sodomy of a 13-year-old victim. See K.S.A. 2016 Supp. 21-5503(b)(2); K.S.A. 2016 Supp. 21-5504(c)(3).

K.S.A. 2016 Supp. 22-3717(d)(1)(G) states that "[e]xcept as provided in subsection (u), persons sentenced to imprisonment for a sexually violent crime . . . who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life." In turn, K.S.A. 2016 Supp. 22-3717(u) provides:

17

"An inmate sentenced to [a hard 25 life sentence] . . . shall be placed on parole for life and shall not be discharged from supervision by the prisoner review board. When the board orders the parole of an inmate pursuant to this subsection, the board shall order as a condition of parole that the inmate be electronically monitored for the duration of the inmate's natural life."

Here, the district court imposed lifetime postrelease supervision for Satchell's grid crime of criminal sodomy. In addition, the district court imposed lifetime parole for his off-grid offenses of aggravated indecent liberties, aggravated criminal sodomy, and rape. We find this to be appropriate under the provisions of K.S.A. 2016 Supp. 22-3717(d)(1)(G) and (u).

We, therefore, conclude that Satchell has failed in his burden to prove that his sentences were illegal.

*Reimbursement of BIDS Attorney Fees*

Finally, Satchell contends that the district court needs to correct the sentencing journal entry to accurately show the costs and fees the court ordered him to pay at sentencing. The State concedes that the journal entry erroneously included BIDS attorney fees even though the district court had stated on the record at sentencing that such fees were waived. See *Abasolo v. State*, 284 Kan. 299, Syl. ¶ 3, 160 P.3d 471 (2007) (stating that "[a] journal entry that imposes a sentence at variance with that pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed"). Although we agree that a nunc pro tunc journal entry should be entered to correctly reflect the district court's ruling regarding the reimbursement of BIDS attorney fees, we note that Satchell has not established that anything else needs to be corrected. Thus, we vacate that portion of the sentencing journal entry that addresses the reimbursement of

18

BIDS attorney fees and we remand this case to the district court for the entry of a nunc pro tunc journal entry.

Affirmed in part, vacated in part, and remanded to the district court to correct clerical error on the sentencing journal entry regarding the reimbursement of BIDS attorney fees.