NOT DESIGNATED FOR PUBLICATION

No. 126,122

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRENT J. CARTER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Submitted without oral argument. Opinion filed May 3, 2024. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Chelsea Anderson*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before HILL, P.J., SCHROEDER, J., and MARY E. CHRISTOPHER, S.J.


PER CURIAM: Brent J. Carter appeals the district court's denial of his K.S.A. 60-1507 motion. The court dismissed his motion after appointing counsel for Carter and conducting a preliminary hearing. Carter contends the court erred. In his view, the court should not have ruled his motion was untimely and the court should have allowed him to present evidence that his lawyer was incompetent.

1

*The details of Carter's convictions are complicated.*

After a gang-related double homicide, the State charged four individuals—Brent Carter, Quincy Carter, Jamion Wimbley, and Johnathan Carter—with various serious felony crimes. See *State v.* [*Johnathan*] *Carter*, 316 Kan. 427, 519 P.3d 608 (2022); *State v. Wimbley*, 313 Kan. 1029, 493 P.3d 951 (2021); *State v.* [*Quincy*] *Carter*, 312 Kan. 526, 477 P.3d 1004 (2020); *State v.* [*Brent*] *Carter*, 311 Kan. 783, 466 P.3d 1180 (2020).

Brent Carter was originally charged with two counts of first-degree murder for the murders of Brenton Oliver and Betty Holloman, off-grid person felonies; two counts of criminal discharge of a firearm, severity level 7 person felonies; and aggravated robbery, a severity level 3 person felony.

This case consists of two prosecutions consolidated for jury trial on the original five charges along with a separate incident charging Carter with two domestic battery offenses—aggravated battery, a severity level 7 person felony; and criminal threat, a severity level 9 person felony. Before trial, the State dismissed the aggravated robbery charge. After the eight-day jury trial in which 38 witnesses testified, the jury returned a guilty verdict on all charges. Carter received two consecutive hard 25 to life sentences plus 27 months.

Carter appealed his convictions, which were affirmed by the Kansas Supreme Court. The mandate was filed on August 11, 2020. See *Carter*, 311 Kan. 783. A detailed recitation of the facts about his crimes can be found in that opinion. 311 Kan. at 784-88.

*Carter commences a collateral attack on his convictions.*

In the month following the mandate—September 2020—Carter filed a pro se K.S.A. 60-1507 motion. He raised three issues: (1) his appellate lawyer failed to raise

issues; (2) his trial lawyer failed to object to discrepancies in witness testimonies; and (3) his trial lawyer failed to object to an alleged ex parte communication by the judge. One month later, Carter moved to amend his K.S.A. 60-1507 motion, supplementing additional information for the same general complaints in the first motion. Following this motion, Carter made several requests for an appointed lawyer.

*Carter amends his motion a second time.*

About eight months later, Carter filed another pro se motion to amend his motion. In the motion, Carter made four claims: (1) the prosecutor and his lawyer violated his Sixth and Fourteenth Amendment rights; (2) ex parte communication between the judge and prosecutor effectively tainted the case and violated his rights; (3) there was insufficient evidence to convict him; and (4) the prosecutor made false statements. As support for his second claim, Carter attached an email sent in August 2019 from his trial counsel, Nika Cummings, to his appellate counsel, Ryan Eddinger. This email supports Carter's claim in the amended petition that an ex parte communication occurred between the judge and prosecutor.

*Carter files a third amended K.S.A. 60-1507 motion.*

The district court granted Carter's request for appointment of counsel, citing that both parties agreed to the appointment on the "limited issue regarding the claim of ex parte communication." Carter also filed a motion for a change of judge reasoning that his current judge, Judge Syrios, was implicated in the alleged ex parte communication. Judge Syrios granted the motion, noting "this court may be called as a witness regarding movant's allegation of ex parte communication" and a new judge was appointed to oversee the K.S.A. 60-1507 motion.

About a year after receiving counsel, Carter filed his third amended K.S.A. 60-1507 motion. In the motion, Carter raised five claims:

- (4A) Ex parte contact: the same general claim that Carter made pro se, adding that the fact that Carter's lawyer was called during the conversation does not negate the violation of Carter's rights.
- (4B) Ineffective assistance of counsel – failing to preserve the ex parte contact.
- (4C) Ineffective assistance of counsel – failing to file a motion to dismiss based on an intervening act. Carter alleges the confession made by a co-defendant constituted an intervening act that may have "saved him on one of the felony murder charges."
- (4D) Ineffective assistance of counsel – failing to request a continuance because trial counsel was "extremely ill." Carter claims that "[b]eing as ill as Ms. Cummings described, her illness may have affected her ability to defend [Carter] appropriately at trial."
- (4E) Ineffective assistance of counsel – failing to adequately cross-examine the witnesses.

Carter subsequently filed a corrected amended K.S.A. 60-1507 motion a month later, adding more analysis under 4C—relying on Cummings' email where she was "in effect admitting that she should have filed a motion that by her analysis was appropriate to file, should have been filed and had a reasonable chance of success."

*An email sent by Cummings sparks Carter's claims.*

Carter's trial lawyer emailed his appellate lawyer in August 2019. Carter relies on this email as the basis for most of his claims.

*Failure to request a continuance claim*

The first section of Cummings' email pertains to Carter's claim that Cummings'

4

representation was deficient for failing to request a continuance for Carter's jury trial:

> "Dear Mr. Eddinger,
>
> I just received your letter asking about Brent's trial. I have dates written somewhere, and will need to get emails written to the judge, but I did get sick right before the trial, and initially I made the court aware that I was not well. I went and got the Tamiflu prescription. I had swollen glands throughout the trial. There were so many witnesses for this trial and the trial had been continued many times because nobody wanted to be the first defendant to go to trial. There is an attitude in Sedgwick County that you just work through it. I have heard so many stories of defense attorneys throwing up in the bathroom because of being sick during trial and just getting through it. Or, there are stories of coming to court with a fever and just dealing with it. If I'm not mistaken, the prosecutor on this case told a story of how she prosecuted a case being sick. If you send an email to the public defender's office, I am sure that the consensus will be the same. I bet you could accumulate hundreds of stories from current public defenders and past public defenders in Sedgwick County who have defended clients while sick because when it is set for court, it is set for court. Sedgwick County is a hard place to practice criminal law. Now that I have had experience in other counties, I see that Sedgwick County is much different than surrounding counties."

The record shows that Cummings was ill during the week leading up to and during the trial. On the morning the jury trial was set to commence, both parties were present to address pretrial matters with the trial court. During this hearing, Cummings stated to the court that she was feeling better and was ready for trial. Later in this hearing, Cummings orally requested two continuances based on evidentiary reasons. Both were denied.

*Motion to dismiss claim*

The next section relates to Carter's claim that Cummings' representation was deficient because she failed to move to dismiss based on an intervening act.

"The one thing that I missed in Brent's case is filing a motion to dismiss based on an intervening act. When I did the research on it, it appeared that Brent's facts weren't as strong as a case where this was granted. I saw this as a losing issue. In Brent's case, Jonathan Carter came in a separate car and admits to killing the male victim [Brenton Oliver]. In Brent's trial, there wasn't much evidence, if I remember correctly, of evidence linking a connection between the people in Jamion Wimbley's [a co-defendant] car (where Brent was) and Jonathan's car, although the police reports indicated he had been contacted by Jamion. Perhaps this may have saved him on one of the felony murder charges."

Carter argues that the email shows that Cummings considered "her own conduct to be both deficient and prejudicial." In his third amended motion, Carter claims that Cummings admitted that "she should have filed a motion that by her analysis was appropriate to file, should have been filed and had a reasonable chance of success."

*Evidence at trial as it relates to earlier claims*

The next portion of the email does not directly relate to claims found in Carter's third amended K.S.A. 60-1507 motion. Rather, the section relates to the evidence at trial and an earlier claim in Carter's second amended K.S.A. 60-1507 motion.

"I think of Brent often because I drive by the penitentiary several times a month. Brent is my first client in 30 years that received a worse outcome than the initial offer after a trial. Other cases that were lost, came back on appeal or were sentenced to a better sentence than the offer before trial. Because this was filed as a felony murder and there were two dead people after shots were fired from Jamion's car, and numerous witnesses placed Brent out of the car shooting a gun, there wasn't a good defense. What is perplexing is that I could have sworn that the shotgun was used in the preliminary hearing as the weapon that was identified and used, and I thought the prosecutor had it either in the courtroom or a picture of it, but then when I reviewed the transcript, there was no mention of it except in my cross-examination. In other words, throughout the reports it

made it appear that Brent was using the gun that couldn't shoot, but in trial they placed a different gun in his hand."

Carter does not rely on this portion of the email in any of his claims. But this section does relate to his previous claim involving insufficient evidence and that the "trial court placed a different weapon" in Carter's hands.

*Ex parte communications claim*

The last part of the email relates to Carter's claim that he was prejudiced by ex parte communications between the judge and the prosecutor both by the communications themselves and because Cummings failed to object or make a record of the improper communications.

> "What I do specifically remember is Trinity Muth [the prosecutor] being in Judge Syrios' office where they were discussing a last minute issue. I am thinking this may have been the Wednesday before trial. They were reading me this motion over the phone and asking if I objected. I hadn't even read the motion yet. On that particular phone call, I told Judge Syrios that I would have to read the motion. It was that morning that I had started with the fever, and that afternoon that I went to get the medication. We ended up having a last minute hearing on either Thursday or Friday or maybe even the following Monday with two co-defendants in the courtroom. When I asked for the preliminary hearing transcript, I was not given the arraignment part of it. Apparently, the State ordered it and there was an issue with how Brent and another defendant were bound over. I confronted Trinity about the ex parte contact that he had with Judge Syrios which was totally inappropriate. Had one of defense counsel gone in to talk about a motion, we would be disbarred. It's a different standard for the prosecution."

Carter relies on this section of the email more than the other sections. He claims that because his lawyer was called into the conversation between the trial judge and the prosecutor, any communications preceding the phone call were improper. He also argues

that because his lawyer failed to object or make any record of the communications, her performance was deficient, thereby prejudicing him in his defense.

*The district court denies Carter's K.S.A. 60-1507 motion.*

The district court discussed each claim raised in Carter's third amended K.S.A. 60-1507 motion and concluded that Carter did not show a reasonable probability sufficient to undermine confidence in the outcome of his trial. Accordingly, the district court denied Carter's motion. Carter moved pro se to object, reconsider, and amend the ruling by the district court. The court denied relief and Carter timely appealed.

*The rules that guide us are well established.*

When presented with a K.S.A. 60-1507 motion, a district court has three options: (1) determine that the motion, files, and case records conclusively show the movant is entitled to no relief and summarily deny the motion; (2) determine from the motion, files, and records that a potentially substantial issue exists and hold a preliminary hearing. If after a preliminary hearing the court determines that there is no substantial issue, the court may deny the motion; or (3) if the court determines that a substantial issue exists, the court may conduct a full hearing. *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020). Depending on which avenue the district court takes, the standard of review varies. 311 Kan. at 578.

When the district court denies a K.S.A. 60-1507 motion after a preliminary, nonevidentiary hearing, the standard of review is de novo. *Bogguess v. State*, 306 Kan. 574, 583, 395 P.3d 447 (2017). In other words, we are in the same position as the district court. A movant bears the burden of establishing entitlement to an evidentiary hearing. To do so, their contentions must be more than conclusory and either set forth an

evidentiary basis to support those contentions or the basis must be evident from the record. *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019).

Carter made five claims in his third amended K.S.A. 60-1507 motion. His first claim relates to the first deficient representation claim—an alleged improper ex parte communication between the trial judge and the prosecutor prejudiced Carter's trial. In his next four claims, Carter contends he received ineffective assistance of counsel.  He claims that his lawyer was deficient for the following:

- failing to object to alleged ex parte contact between the prosecutor and the trial judge;
- failing to file a motion to dismiss based on the intervening act that co-defendant Johnathan Carter came in a separate car and admitted to killing one of the victims;
- failing to request a continuance due to Carter's lawyer's illness; and
- failing to adequately cross-examine the witnesses at trial.

The district court denied Carter's K.S.A. 60-1507 motion finding Carter failed to show a reasonable probability that would undermine confidence in the outcome of his trial.

*We define two important terms.*

Carter's claim presents issues relating to the ineffective assistance of counsel. In resolving such claims we look in the record for two things. Was there evidence of deficient performance? And, if there is such evidence, what prejudice to the accused resulted from that deficient performance?

In *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985), the court directed that a defendant must first show their lawyer's representation fell below an

9

objective standard of reasonableness. Judicial scrutiny of a lawyer's representation must be highly deferential, and any fair assessment of that representation requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances of the challenged conduct, and evaluate from counsel's perspective at the time. *Khalil-Alsalaami v. State*, 313 Kan. 472, 485-86, 486 P.3d 1216 (2021).

Proceeding to the next step, if deficient representation is found, a defendant must then establish prejudice by showing with reasonable probability that the deficient performance affected the outcome of the proceedings. Reasonable probability means a probability sufficient to undermine confidence in the outcome. Reviewing courts must consider the evidence before the fact-finder. *Khalil-Alsalaami*, 313 Kan. at 485-86.

*Carter has failed to show any improper ex parte communication occurred.*

Carter argues that an email sent by his trial lawyer, Nika Cummings, to the lawyer who handled his direct appeal, Ryan Eddinger, is evidence that improper ex parte communications between the trial judge and the prosecutor had occurred. In the email, Cummings discussed an incident where she received a phone call from the trial judge to address a last-minute motion before trial. Cummings claimed that she did not receive notice of the motion and requested time to review it. She then discussed a confrontation with the prosecutor about the alleged ex parte communications and characterized the communications as "totally inappropriate." Cummings concluded that "[h]ad one of defense counsel come in to talk about a motion, we would be disbarred. It's a different standard for the prosecution." We first question the significance of this claim.

Black's Law Dictionary defines ex parte communication "between counsel or a party and the court when opposing counsel or party is not present. Such communications are ordinarily prohibited." Black's Law Dictionary 348 (11th ed. 2019). Under Canon 2 of the Kansas Code of Judicial Conduct, "[a] judge shall not initiate, permit, or consider ex

10

parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a *pending* or *impending matter* . . . ." Supreme Court Rule 601B, Canon 2, Rule 2.9 (2023 Kan. S. Ct. R. at 497). Nothing of substance is pled here.

Also, there appears to be no Kansas case which addresses relief for an improper ex parte communication between a judge and prosecutor. Our courts have, however, addressed situations where a trial judge had ex parte communications with jurors. See *State v. Walker*, 308 Kan. 409, 421 P.3d 700 (2018); *State v. Rayton*, 268 Kan. 711, 1 P.3d 854 (2000); *State v. McGinnes*, 266 Kan. 121, 967 P.2d 763 (1998).

Some federal cases have addressed communications between a judge and opposing counsel. The federal courts have only minimally addressed this issue, but the courts employ the same standard that our courts applied to situations involving ex parte communication between a judge and jury. See *McKenzie v. Risley*, 915 F.2d 1396, 1398 (9th Cir. 1990); *Walker*, 308 Kan. 409; *Rayton*, 268 Kan. 711. Under that standard, the movant bears the burden to establish an improper ex parte communication occurred and that the communication could have influenced the judge. See *Whisenhant v. Allen*, 556 F.3d 1198, 1209 (11th Cir. 2009); *McKenzie*, 915 F.2d at 1398.

Here, Carter claims that the alleged ex parte communication between the prosecutor and the trial judge violated his due process rights and denied him a fair trial. In support, Carter falls back on his motions which contain conclusory statements alleging ex parte communication.

Carter's jury trial began January 29, 2018. So, based on Cummings' email, the alleged ex parte incident likely occurred on January 24. The record reveals that Cummings filed several motions about 10 days before trial and the State filed one motion to endorse a witness 7 days before trial. Nothing in the record reveals the contents or

11

subject of the motion that was allegedly discussed during the alleged improper ex parte communication.

In the order denying Carter's K.S.A. 60-1507 motion, the district court noted that Carter failed to establish what was allegedly discussed beyond an unidentified motion during the communication between the trial judge and the prosecutor. And the court noted that Carter had "four opportunities to investigate and properly plead this issue." The district court concluded that Carter failed to sufficiently plead or show a "reasonable probability that, but for Cummings's failure to file or record any issue regarding the alleged improper ex parte contact, the result of the proceeding would have been different."

In rebuttal, Carter argues that "he can not offer complete details of a conversation that, by definition, occurred outside of his and his trial counsel's presence, and he had provided all of the details known to him." He claims that the only way to resolve this issue is to take testimony from the trial judge and the prosecutor to "establish which motion was at issue and the conversations that occurred before Cummings was telephoned, as well as from Cummings to establish why she failed to preserve the issue." Given the practical impossibility for Carter to provide details of the communication, Carter argues that he sufficiently pled "facts not appearing in the original record which, if true, would support a claim for relief, warranting an evidentiary hearing, and accordingly, the district court must be reversed."

*The district court correctly denied Carter's K.S.A. 60-1507 motion based on alleged ex parte communication.*

The district court correctly concluded that Carter failed to establish that the alleged ex parte communication prejudiced him or deprived him of a fair trial. Nothing in the record or Carter's brief and motions establishes improper ex parte communication

between the trial judge and the prosecutor. The State argues that Cummings' email "merely states the prosecutor was there *to* discuss a last-minute issue, not that one was actually discussed prior to getting Cummings on the phone." The State claims that "[a] conversation between the parties and the judge when one party is present via telephone is not ex parte communication." A collateral investigation also concluded "that no ex parte communication did occur."

Even if we find that Cummings' representation was deficient for failing to make a record of the alleged ex parte communications, Carter has failed to establish how the communication or Cummings' failure to object prejudiced him at trial. Thus, the district court did not err by summarily denying Carter's K.S.A. 60-1507 motion.

*Was Carter's lawyer's performance deficient because she failed to pursue an intervening act defense?*

Carter next claims that his lawyer was deficient because she failed to move to dismiss based on an intervening act. The district court concluded that Carter's motion—along with the attached email—did "not state or specify what acts would serve to meet the standard to be considered material intervening acts for purposes of this claim."

In the email, Cummings states that when she researched this issue, "it appeared that Brent's facts weren't as strong as a case where [a motion to dismiss based on an intervening act] was granted." Cummings admits that she saw "this as a losing issue."

Actions result in consequences. Some criminal statutes recognize that certain crimes can be committed while another crime is being committed. The conviction that Cummings refers to in this issue is the two felony murder convictions. Felony murder is defined under our statutes as the killing of a human being "in the commission of, attempt to commit, or flight from any inherently dangerous felony." K.S.A. 21-5402(a)(2). The

13

State needed to prove that the killing occurred while Carter committed the underlying felony of criminal discharge of a firearm, which our Legislature included in the list of qualifying inherently dangerous felonies. K.S.A. 21-5402(c)(1)(O); see also [*Johnathan*] *Carter*, 316 Kan. at 436.

But there must be a direct causal connection between the killing and the commission of the felony for a proper felony murder conviction. *State v. LaMae*, 268 Kan. 544, 555, 998 P.2d 106 (2000). This is proven by showing that the acts related to the criminal discharge of a firearm and the killing were "close enough in time, close enough in distance, and close enough in causal relationship to 'form, in reality, a part of the occurrence.'" [*Johnathan*] *Carter*, 316 Kan. at 434 (citing *State v. Cameron*, 300 Kan. 384, 396, 329 P.3d 1158 [2014]).

Once established, the only way to break a direct causal connection is if an extraordinary intervening event superseded the defendant's acts to become the sole legal cause of the killing. *State v. Phillips*, 295 Kan. 929, 941, 287 P.3d 245 (2012). The extraordinary event must cut off the foreseeability of the death to sever the direct causal connection; an intervening event is not extraordinary if foreseeable. *State v. Wilson*, 308 Kan. 516, 525, 421 P.3d 742 (2018). In essence, this is the intervening act defense.

The statute does not require proof that the defendant specifically fired the shots that killed the victims for a felony murder conviction. No matter who fired the fatal shot, all codefendants are just as guilty of felony murder. *State v. Dupree*, 304 Kan. 377, 393, 373 P.3d 811 (2016).

*Carter fails to show prejudice.*

Had Cummings filed such a motion, Carter fails to show the motion would have affected the outcome of his trial. The intervening act appears to be Carter's codefendant,

14

Johnathan Carter, admitted to killing Oliver. This, however, was contrary to the evidence presented at all four codefendants' trials. See *Carter*, 311 Kan. at 784-87; [*Johnathan*] *Carter*, 316 Kan. at 428-29; [*Quincy*] *Carter*, 312 Kan. at 527-28; *Wimbley*, 313 Kan. at 1030. In an interview, Johnathan Carter admitted firing at Oliver but did not expressly admit to killing him. [*Johnathan*] *Carter*, 316 Kan. at 429.

Nothing in the record reveals an extraordinary intervening event which would sever the chain of events that resulted in Carter's liability for felony murder. Even if Cummings filed the motion, Carter fails to show a reasonable probability that the failure to file the motion affected the outcome of his trial. Therefore, the district court did not err by rejecting Carter's claim that he was prejudiced by deficient representation because his lawyer failed to move to dismiss.

*We examine the claims of failing to cross-examine seven witnesses.*

Carter claims that his trial lawyer's performance was deficient for failing to adequately cross-examine 7 of the 38 witnesses called at trial:

- Officer Charles Byers
- Lieutenant Todd Ojile
- Officer Jeff Walters
- Officer Bryan Knowles
- Officer Jason Cooley
- Manitoba Presley
- Gladys Figures

These seven witnesses' testimonies generally discussed the two vehicles associated with the four suspects, the firearms found in the vehicles, and how the investigation proceeded. None of Carter's allegations about deficient performance for failing to cross-examine these witnesses is supported in the record.

15

*Officer Charles Byers*

Carter claims this officer could have offered exculpatory evidence that Carter was not the driver of the suspect's car. The testimony that Carter refers to is the interview Byers conducted with Leslie Tolbert, who lived near the crime scene. Tolbert testified at trial about the car and the possible driver of that car involved in the shooting. Cummings cross-examined Tolbert about his description of the driver.

Therefore, Cummings cross-examined the witness that could have offered the evidence Carter complains that his lawyer failed to question Byers about. Because Cummings did question the eyewitness on this subject, the district court was correct to conclude Carter failed to show deficient representation and prejudice.

*Lieutenant Todd Ojile and Officers Jeff Walters, Bryan Knowles, and Jason Cooley*

Carter claims these witnesses could have offered testimony that Carter did not possess the guns found during their investigations. Even so, the specific gun that Carter possessed is irrelevant to the charges. As mentioned above in Carter's failure to move to dismiss based on intervening acts, whether Carter fired the gun that killed the victims is irrelevant to proving felony murder. The State only had to prove that Carter, or another for whose conduct he is criminally responsible, discharged a firearm at a motor vehicle and an occupied dwelling which resulted in two murders. Therefore, it was irrelevant which gun was the one Carter possessed and used in the homicides.

*Manitoba Presley*

Carter claims this witness "saw Jonathan Carter drive and park a car that was suspected to have been involved in the homicides on the day of the incident, and did not establish any connection to Carter in her testimony."

Presley is Johnathan Carter's mother and testified about her son's whereabouts on the day of the homicides. There was no testimony that she could have offered regarding Brent Carter's involvement in the homicides. Therefore, Carter's claim based on this witness does not establish prejudice.

*Gladys Figures*

Carter claims this witness "found a car at her home that she did not recognize, later established as being involved in the homicides, and did not establish any connection to Carter in her testimony."

Figures testified about a car that she did not recognize—a grey Dodge Magnum. This car was one of two cars suspected in the homicides. Carter's claim that Figures' testimony did not establish any connection to Carter directly does not mean Cummings' decision not to cross-examine this witness means her representation was deficient. Carter further does not show how the failure to cross-examine this witness prejudiced the outcome of his trial.

*Carter fails to show prejudice based on his lawyer's failure to cross-examine seven witnesses.*

17

A trial lawyer's decision to not cross-examine certain witnesses does not amount to deficient representation because it falls within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Because Cummings' decision to not cross-examine these witnesses falls under that wide range, Carter fails to show how Cummings' representation was deficient or how he was prejudiced by her representation. Therefore, the district court did not err in dismissing this claim.

*Claims about Carter's lawyer's illness before trial are insignificant.*

Carter alleges that he was prejudiced because his lawyer failed to request a continuance due to her illness. He claims that is deficient representation. He argues that the severity of the charges against him, along with the length of trial (eight days), is "strenuous and time-consuming and requires trial counsel to call upon a great reserve of physical and mental stamina."

Cummings got sick shortly before Carter's trial. She stated in the email to Carter's appellate lawyer that she first informed the court that she was ill and got a "Tamiflu prescription." She also stated that she suffered swollen glands throughout the trial. The district court presumed that Cummings was ill before and during the trial and stated that "[o]n its face, Cummings should have requested a continuance if she believed she was too ill to go to trial."

As noted in the State's brief, Cummings made an oral motion to continue the jury trial 10 days before it was set to commence. Ten days later, on the morning of the jury trial, the trial court took up several pretrial motions with both parties present. During this hearing, the trial court addressed Cummings' illness. The court noted that the parties attempted to have the hearing the week before but were unable to because Cummings was ill. The court then stated that the parties and the court were in communication over the weekend where they monitored Cummings' health condition, and she "was very good to

18

keep [the court and parties] up on things." The court also referenced email correspondences which indicated Cummings "had at least started to turn the corner." To conclude this colloquy, Cummings told the trial court that she was doing better and ready to go forward with trial.

During the same hearing, Cummings renewed her oral motion to continue the jury trial two times. In these two renewed requests, Cummings first claimed she needed a continuance to obtain transcripts and then renewed the motion because she claimed that she did not have *Giglio* information on a law enforcement officer. The trial court denied both motions.

Had Cummings motioned to continue the jury trial due to her illness, the likelihood of success was slim. The trial court denied two renewed continuance motions and was aware of her illness. Given the standard for ineffective assistance of counsel claims, Carter failed to show a reasonable probability that a motion to continue his jury trial due to his lawyer's illness would have been successful or affected the outcome of his trial. Carter also fails to show how Cummings' representation was deficient because of her illness, let alone how his outcome would have been different had a continuance been granted. Thus, the district court did not err in denying Carter's final claim of ineffective assistance of counsel for Cummings' failure to request a continuance due to her own illness.

*None of Carter's allegations show a reasonable probability that the claims affected the outcome of his trial.*

We agree with the district court that Cummings had several options. She could have objected to the alleged ex parte communication. Or counsel could have moved for some appropriate relief. Also, counsel could have cross-examined witnesses if necessary or requested a trial continuance. Carter failed to show us a reasonable probability that any

19

of his claims affected the outcome of his trial. Therefore, the district court did not err in denying Carter's K.S.A. 60-1507 motion.

Affirmed.